1              UNITED STATES DISTRICT COURT FOR THE
    EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, ST. LOUIS

2

3   UNITED STATES OF AMERICA,        )
                                     )
4                    Plaintiff,      )
                                     )
5   v.                               )    No. 4:14-CR-00175-AGF
                                     )    and 4:14-CR-00152-RWS
6   CHARLES WOLFE, II,               )
                                     )
7                    Defendant.      )

8

9                       STATUS CONFERENCE

10

11          BEFORE THE HONORABLE AUDREY G. FLEISSIG
                  UNITED STATES DISTRICT JUDGE

12                       JANUARY 24, 2018,

13  APPEARANCES:

14
    For Plaintiff:      James C. Delworth
15                      Erin O. Granger
                        OFFICE OF U.S. ATTORNEY
16                      111 S. Tenth Street, 20th Fl.
                        St. Louis, MO 63102
17
    For Defendant:      Charles Wolfe, II,
18                      Appearing Pro Se

19

20  REPORTED BY:        PATTI DUNN WECKE, RMR, CRR, CMRS
                        Official Court Reporter
21                      United States District Court
                        111 S. Tenth Street
22                      St. Louis, MO 63102
                        314-244-7984
23

24

25     PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

1    (THE FOLLOWING PROCEEDINGS WERE HAD ON JANUARY
2    24, 2018, BEGINNING AT APPROXIMATELY 10:09 A.M., IN OPEN
3    COURT, AND WITH DEFENDANT PRESENT:).

4    THE COURT:  We are here in the matter of United
5    States of America versus Charles A. Wolfe, the Second, in
6    Case Nos. 4:14-CR-175-AGF and 4:14-CR-152-RWS.  And this
7    matter is before the Court today on a petition for
8    appointment of new counsel that was filed by Mr. Wolfe.
9    This Court previously had a status conference with Mr.
10   Wolfe, at which time he advised that he did not wish to
11   continue with the attorneys that he had retained.  The
12   Court gave the defendant a period of time to determine
13   whether he was going to obtain new counsel or whether he
14   wished to proceed pro se in this matter.  And this petition
15   for appointment of new counsel was filed.

16   I scheduled this status hearing because -- and
17   I'm sorry, Mr. Wolfe is present and appearing pro se.  And
18   the United States is also present here and represented by
19   Assistant United States Attorneys Jim Delworth and Erin
20   Granger.  I scheduled this status conference because it was
21   not entirely clear to me from reviewing the petition filed
22   by Mr. Wolfe what it was that he was seeking.

23   And so, Mr. Wolfe, if I could get you to come
24   forward, please, sir?

25   THE DEFENDANT:  Good morning, Your Honor.

1           THE COURT:  Good morning.  And there were a

2   couple of things that were unclear to me at -- hold on just

3   one second.

4           THE DEFENDANT:  I know what you're looking at.

5           THE COURT:  You say in the middle of this first

6   page that you "desire to enter as co-chair, along with my

7   counsel."  And I don't understand what that means.

8           THE DEFENDANT:  Your Honor, if I -- please here.

9   Could we ask Mooch to exit the court before I speak?

10           THE COURT:  Ask who?

11           THE DEFENDANT:  Mooch.

12           MR. DELWORTH:  He's referring to Special Agent

13   Anderson, one of the case agents in the case.

14           THE COURT:  Why?

15           THE DEFENDANT:  There's reasons.  I'm sure they

16   all know.  But I don't see where his presence is necessary.

17   Mr. Delworth and Ms. Granger --

18           THE COURT:  Unless there's something about his

19   presence that impacts your issues with respect to counsel,

20   we have open court, sir, and anybody is welcome to come

21   in --

22           THE DEFENDANT:  Well, but he's not anybody.

23   Recent information has come to me from my family that he

24   and Agent House -- my family holds those two responsible

25   for his death.  They made credible threats to him and that

1  resulted in his suicide.  Again, I've recently been

2  given --

3            THE COURT:  Whose suicide?

4            THE DEFENDANT:  My brother James Wolfe.

5            THE COURT:  When did this occur?

6            THE DEFENDANT:  January of last year.  The

7  interviews, they have to be forthcoming and tell you when

8  they happened.

9            THE COURT:  All right.  I am not going to force

10  anyone out of the courtroom.  Mr. Wolfe, can we just talk

11  about the appointment of counsel here?

12            Can you explain to me what you mean by you desire

13  to enter as co-chair alongside an attorney?  Because that's

14  not an option.  So tell me what it is you are seeking here.

15            THE DEFENDANT:  Well, my voice wasn't heard, my

16  wishes weren't followed during the trial and I have --

17  won't feel comfortable if I don't have somebody that I can

18  work with.  And I don't know the terminology, but I thought

19  that it was to be co-chair with my counsel.

20            THE COURT:  No.  These are your options,

21  Mr. Wolfe --

22            THE DEFENDANT:  I read the motion.  I understand.

23  I just don't want somebody that --

24            THE COURT:  Mr. Wolfe, I'm sorry.  You're going

25  to have to listen to me.  Okay?  So please don't interrupt

1  me when I'm trying to explain the situation to you.  All

2  right?  Because I'm trying to explain to you what your

3  options are here.

4         You may elect to proceed pro se in this matter;

5  in other words, to represent yourself, in which event I am

6  willing to appoint standby counsel for you, an attorney

7  that you can talk to and will give you advice and tell you

8  how to do things and may assist in very basic matters, you

9  know, if you need help like getting something filed or you

10  need to go get a copy of something.  But that attorney

11  would not stand up and represent you in court.  In other

12  words, if there was cross-examination to be done of

13  witnesses or formal pleadings to be filed, you would be

14  responsible to file those, not the attorney.  That attorney

15  would assist you and give you advice and answer your

16  questions.

17         The other option is to have an attorney represent

18  you, in which case that attorney would be speaking for you

19  here in court.  If there were witnesses to be examined and

20  motions to be made, that attorney would be making those

21  filings on your behalf.  You would still be the client and

22  you would be able to discuss with the attorney what you

23  want.  So if there were choices to be made -- so, for

24  instance, when the time came for you to decide whether to

25  try the case or enter into a plea, that decision would be

1   yours. You would be able to direct the attorney with

2   respect to what you want. But understand, the attorney

3   will not do anything that the attorney feels is not

4   justified or is not supported because that attorney has

5   ethical obligations to the Court and to the system as well.

6          So, for instance, if you were to ask that

7   attorney to file a motion that the attorney felt had

8   absolutely no basis and was not in good faith, that

9   attorney would tell you he's not, or she's not going to do

10   that; do you understand that?

11          THE DEFENDANT: I understand everything you're

12   saying.

13          THE COURT: So what is it that you are seeking,

14   sir? Are you seeking to represent yourself with standby

15   counsel or are you seeking to have new counsel appointed to

16   represent you?

17          THE DEFENDANT: Well, as I said in the last

18   sentence, I'm seeking to have from the federal defenders

19   panel an appropriate counsel assist me. But I'm going to

20   again restate that I went through a lot of things. For

21   instance, my counsel -- I'm not questioning the ethics.

22   Mr. Lucco is way up here. Nothing bad. None of the

23   attorneys I know, they all like him.

24          But I was told that my defense portion was going

25   to last two weeks. I had mounds of stuff that was created

1  over the years, going back to 2011 when I brought in

2  Timothy Dandar.  Going back to August 2012 when I hired

3  Scott Rosenblum for a couple of years.  He was my counsel.

4  And then we brought in Bill Lucco.  Moving forward, I had a

5  mountain of information that I think if the jury had heard

6  we could have been more effective.  And it turned out from

7  two weeks it went to two hours with none of my witnesses.

8  I even had three character witnesses in court and he told

9  me that Mr. Delworth said if we brought in more than one

10 they would pound him hard.  Dan Glazier, an attorney friend

11 of mine, was sitting there ready and willing and able.

12 Jonah White, ready, willing, and able.  And he had reasons

13 why we couldn't -- so that is -- I could give you hundreds

14 of these.

15              THE COURT:  Okay.  But Mr. Wolfe, you still

16 haven't answered my question.

17              THE DEFENDANT:  What I'm saying is that they

18 didn't execute the things that I wanted.  I understand that

19 the motions that can be filed and can't be filed, I don't

20 know that.  I need help.  I'm not trying to do this pro se,

21 no.

22              THE COURT:  Okay.  So you are not -- are you

23 seeking to represent yourself with standby counsel?

24              THE DEFENDANT:  No, Your Honor.

25              THE COURT:  So you want me to appoint counsel to

1 | represent you?

2 | THE DEFENDANT:  Yes, Your Honor.  One of the
3 | statements I said --

4 | THE COURT:  You understand, though, sir, if I
5 | appoint counsel to represent you, you are not co-chair.
6 | You are not counsel in the case.  You can't say okay, well,
7 | I'm going to take this witness and you take the next one.
8 | Do you understand?  You can't have it both ways.  You may
9 | proceed pro se with standby counsel or you can have an
10 | attorney represent you.  But I cannot appoint an attorney
11 | to represent you, have your attorney file something, and
12 | have you file three other things.  I need to know whose
13 | voice is speaking on your behalf in court.  So you can't
14 | have an attorney appointed to represent you, that attorney
15 | files something and then you file three other things on
16 | your own.

17 | THE DEFENDANT:  Understand.  One of the requests
18 | I had was can I have two to choose from so that I can do
19 | some homework on whether or not I can work with that
20 | person?

21 | THE COURT:  No, no.  You are not selecting
22 | attorneys to retain in this matter.  The Court appoints the
23 | attorneys.  This is not a fashion show where I trot out
24 | several possible attorneys and you sit down and interview
25 | them and decide which one you want.  This is something that

1   is provided by the Court to make sure that we are

2   satisfying your constitutional rights to have counsel

3   represented.  We screen the attorneys who are on our CJA

4   panel to make sure that they are all experienced.

5   Obviously, there are a ton of attorneys on our CJA panel

6   who are conflicted out because they have represented other

7   codefendants or related defendants in this matter.  But

8   there are still quite a few very experienced attorneys and

9   the Court will choose that attorney.

10              Obviously, we wouldn't choose any attorney that

11  we did not think was equal to dealing with the types of

12  issues that are presented here.  But understand, we don't

13  have any attorneys on our CJA panel who aren't capable of

14  handling the types of issues presented in this case.

15  Otherwise, we wouldn't have them on our lead panel.

16              THE DEFENDANT:  I've heard good things about the

17  panel.  Can I have, Your Honor, briefly, say this?  I said

18  a few things in open court that I wanted to substantiate or

19  revise.  One of them is I told you that I had to have

20  Mr. Lucco and Mr. Threlkeld withdraw because a few of the

21  attorneys I had talked to told me they weren't really able

22  to discuss anything with me while I had an attorney

23  retained.  And that's one of them, for example.

24              THE COURT:  All right.  And you are giving this

25  to me because?

1            THE DEFENDANT:  Because at the bottom it restates

2 what I had told you, that I'm not really able to talk to

3 you while you have other counsel.

4            THE COURT:  All right.  And you don't have other

5 counsel --

6            THE DEFENDANT:  No.

7            THE COURT:  -- because you asked that I --

8            THE DEFENDANT:  But I made that statement.  I

9 also -- you asked me before the trial if we had attempted

10 to work out some sort of deals with U.S. Attorney's Office

11 and I took a prolonged period of time and I stepped back

12 and everything.  And that was because there was no

13 attempts.  That morning I heard Mr. Lucco -- with these

14 on -- talk to Mr. Delworth about some sort of possibility.

15 Mr. Delworth said we're not inclined to do anything at this

16 point.  And then you bring me up here and ask me questions.

17 So I felt bad about that afterwards because I kind of

18 misled and didn't look proper.

19            I also felt bad when you asked me how I felt

20 about my counsel.  My counsel knew all along that I had

21 problems.  We had problems with the co-counsel.  We

22 separated ourselves.  I was in Judge Ross's witness room

23 the last half of the trial because we had serious

24 differences, beginning with the fact that the person that

25 chaired the jury selection had no intentions of standing in

1  front of the juror and cross-examining or anything.  She

2  just simply didn't have the experience to be picking the

3  jury when she wasn't going to talk to the jury.  Juror

4  number 1 I asked to be dismissed.  I believe that I refused

5  to do business with Juror 1 and that company.  I was very

6  picky who I did business with.  And I told my counsel I

7  think -- I don't feel good -- we've got to get rid of him

8  when the offer was given.  And the other counsel said,

9  well, he kind of winked to us in the cafeteria so we want

10  to keep him.

11            I had many things going on that just weren't

12  right.  And Mr. Lucco has even said, Chuck, if I had to do

13  it over again I would have done it your way.  The problem

14  was he delegated Threlkeld for the last few years and he

15  really wasn't up to speed on a lot of stuff.

16            So I'm kind of just restating why I don't want to

17  get my hands tied.  The matters at hand are not as serious

18  as the trial was.  But there are still serious matters at

19  hand.  So that statement there also alluded to the fact

20  that I think I was less than honest when I was asked what I

21  believed about my representation during the trial.

22            THE COURT:  That may be, Mr. Wolfe, but you make

23  choice about what you say when you stand up in front of the

24  Court.

25            THE DEFENDANT:  I also -- again, so I'm trying to

1  correct the record.  I mean, I was also just told just

2  prior to that that if I -- nobody -- we didn't prepare for

3  me to testify.  They knew all along that I wanted to

4  testify.  Co-counsel said they were terrified that Chuck

5  will testify.  And my counsel told me that it would piss

6  the Judge off if I asked for us to prepare.  Friday the

7  13th is when the decision was to be made.  But it would

8  upset her and she's the one that controls the sentencing if

9  you lose and so forth.  So I made the decision, but I told

10  him we need to work this weekend and be prepared for me to

11  testify.  That's what I told you all along.  And he also

12  said he couldn't get me ready to testify as well as prepare

13  a closing statement.

14           So, again, these are just small amounts but I

15  felt I needed to right the record on those items that I

16  covered.

17           THE COURT:  Mr. Wolfe, you may say what you wish.

18  The record is what the record is.  And the fact that you

19  are saying these things today doesn't undo what you said

20  previously; you understand that, sir?

21           THE DEFENDANT:  In my mind it does.

22           THE COURT:  I understand that it does in your

23  mind, but you understand that the Court makes decisions and

24  things occur in the courtroom based upon your

25  representations in court.  And the Court relies on your

1     representations in court.  I rely on your representations

2     in court.  And it's a little bit of a problem for me for

3     you to come and say well, just kidding, I didn't mean that

4     then, this is what I meant -- after you have been convicted

5     by the jury.

6                   So I am not suggesting to you, Mr. Wolfe, that

7     you don't have the ability to make whatever record you

8     want.  We are not here today to determine whether you

9     received ineffective assistance of counsel.  We are here

10    today to understand what it is that you were seeking with

11    respect to appointment of counsel.  That's the issue that's

12    before me today; you understand that?

13                   THE DEFENDANT:  In life when you go forward you

14    have to know where you've been.  So I cited where I've

15    been, where I came from, and not wanting to go there again

16    with the ineffective counsel, so that's why I stated it.

17                   So I don't have a legal knowledge, but I clearly

18    know Your Honor does.  So if it doesn't change the record,

19    at least I -- at least my voice was heard.

20                   THE COURT:  And if you feel you have these issues

21    to raise, Mr. Wolfe, there are plenty of opportunities

22    within the Federal Rules of Criminal Procedure and relevant

23    statutes for you to raise those issues.  All right?

24                   THE DEFENDANT:  Yes, Your Honor.

25                   THE COURT:  I'm not suggesting to you that you

1   are foreclosed from raising these issues --

2            THE DEFENDANT:  I understand.

3            THE COURT:  -- another day.  It's just today is

4   not that day.

5            THE DEFENDANT:  Okay.  If I could get that letter

6   from Michael Gross back.

7            THE COURT:  Well, I will need to make a copy of

8   it.  You understand you can't present things to the Court

9   for me to review and then have it be nowhere on the record.

10  So we'll make a copy of it and return it to you.

11           THE DEFENDANT:  It can be mailed to me.

12           THE COURT:  No.  We'll just make it now and

13  return it to you.  All right?

14           THE DEFENDANT:  Okay.  So, again, I mean just --

15  if it's not clear, I wish for you to appoint from the

16  federal panel counsel for me going forward.

17           THE COURT:  Okay.  But you understand, Mr. Wolfe,

18  that that person will be your attorney?

19           THE DEFENDANT:  I clearly, 100 percent

20  understand.

21           THE COURT:  And, you know, it's not like okay,

22  well, you file your pleading and I'll file mine; you

23  understand that?

24           THE DEFENDANT:  Oh, I understand.  I've got no

25  interest in filing anything else with the Court.

1           THE COURT:  All right.  I just want to make sure

2   that we're on the same page as we move forward to appoint

3   new counsel to you.  You may rest assured that any attorney

4   that we appoint for you will be very knowledgeable, very

5   experienced, will be someone who I believe is capable of

6   handling the types of issues that I know remain in this

7   case.  Okay?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  All right.  Is there anything from

10  the Government?

11          MR. DELWORTH:  Well -- Your Honor, just one

12  point.  I know in the motion there was a statement by

13  Mr. Wolfe that he was indigent and did not have the funds

14  to afford an attorney.  There is -- I believe that

15  Mr. Wolfe actually has control of two vapor shops and also

16  a vapor supply shop.  Mr. Wolfe was careful in terms of

17  whether various entities were put in his name.  I don't

18  believe that they were in his name.  I believe that they're

19  being run by his daughter.  I believe that they were

20  purchased -- at least one of the stores there was money put

21  up.  Obviously, the Government's position that the money

22  ultimately came from proceeds of synthetic sales.

23          Additionally, the money for the vapor supply

24  facility, the second vapor shop was -- is part of a

25  settlement with Joseph Gabrick, one of the codefendants in

1  this case.  I think as part of the settlement, Joseph

2  Gabrick turned over the vapor store to Mr. Wolfe, who -- my

3  understanding is, put it either in his daughter's name or

4  had his daughter run it, one of the two if not both.

5          So it's the Government's understanding that there

6  may be some assets out there, whether it would be

7  sufficient to afford an attorney to be retained or to

8  reimburse the Government for the appointment of an

9  attorney.  So I just want to bring that to the Court's

10 attention.

11          THE COURT:  Now you understand, Mr. Wolfe, that

12 in connection with the appointment of counsel that you will

13 be asked to complete an affidavit.  And I will wait to do

14 that until the attorney is appointed so that if you have

15 questions about that, you can ask the attorney.  But you

16 understand if you have not done so already --

17          THE DEFENDANT:  I've done it twice.

18          THE COURT:  You have done what twice?

19          THE DEFENDANT:  I filled out an affidavit

20 pretrial to ask for assistance in paying for the chemist

21 and I filled out all the financial records for Michael

22 Bridges.  And, unfortunately, Mr. Delworth used the word

23 "believe" several times; it's inaccurate.

24          THE COURT:  But you have filled out the court's

25 financial form under oath?

1          THE DEFENDANT:  With Michael Bridges and I signed

2    the affidavit with my counsel that they should have

3    delivered to the Court pretrial.

4          THE COURT:  All right.  I'll have to look in the

5    record and see if we have such a financial affidavit for

6    you.  But the Court -- the case has also been pending for a

7    very long period of time and people's finances change over

8    time.  So if that financial affidavit has not been

9    completed in the last six months or so, I am going to

10   require that you file a financial affidavit.  And you

11   understand that what you represent on that affidavit will

12   be subject to the penalties of perjury?

13         THE DEFENDANT:  Absolutely.  And Mr. Delworth

14   speaking of a store Mr. Gabrick --

15         THE COURT:  Oh, please, Mr. Wolfe.  So you

16   understand that that will be signed subject to the

17   penalties of perjury?

18         THE DEFENDANT:  Yes.

19         THE COURT:  And if Mr. Wolfe executes an

20   affidavit that demonstrates that he meets the requirements

21   for appointment of counsel, then that is what will be done.

22   If, in fact, the Government believes that the statements on

23   the affidavit are untrue, then the Government knows that

24   there are procedures that can be employed for the

25   Government to challenge that or to seek to have the

1　defendant reimburse the Court for the cost of appointed

2　counsel.  But right now you're talking about the equivalent

3　of piercing a corporate veil.  You're talking about

4　demonstrating that transfers were fraudulent transfers or

5　something of that sort.  Or that Mr. Wolfe retains an

6　interest in something that is not in his name.  That's

7　something that if you wish to prove that to me, you can

8　prove that to me.  I am not going to deny Mr. Wolfe the

9　appointment of counsel because you believe that he may have

10　some assets.

11　　　　　So the Court, as we do with all defendants, will

12　rely on the financial affidavit that Mr. Wolfe files.  He

13　will be required to file a new affidavit unless the Court

14　contains an affidavit that was signed within the last few

15　months.  And you understand, Mr. Wolfe, that that will be

16　subject to the penalties of perjury?  You understand that

17　if the information on that is untrue, you could be exposing

18　yourself to a new prosecution?  I just want to make sure

19　you understand that.  I'm not suggesting that's the fact,

20　I'm just making sure you understand your rights and also

21　your responsibilities.  And I'm not going to require you to

22　fill out that new financial affidavit if the record, in

23　fact, includes one that was signed very recently.  If not,

24　then you will be required to sign a new one, but I will not

25　do that until you have counsel available to work with you

1  in case you have questions about the financial affidavit.

2  All right?

3  THE DEFENDANT: Yes, Your Honor. One very

4  important thing I want to address with the Court. I spoke

5  to Mr. Threlkeld about this yesterday. My cancer is a

6  serious issue. I am due or past due for a CT scan of the

7  abdomen, chest, and pelvis. When your cancer is riddled in

8  the body so many places, the -- it's supposed to be every

9  90 days. And I've adhered to that -- sometimes 120 days.

10  If Your Honor may remember, the week before the jury

11  selection we wanted the 19th to have a morning meeting and

12  I told you I had a meeting with my surgeon who performed my

13  first surgery for cancer. And that was on the 19th in the

14  morning, we were here in the afternoon. He got all the

15  paperwork and I did my CT scan on the 22nd of September.

16  So it's been 122 days, thereabouts, four months and two

17  days.

18  I've -- and frankly, my concern has been enhanced

19  by the diet. They give you no sorts of vegetables. Colon

20  health by itself is enhanced by colon cancer. And I've

21  probably had several setbacks in the last three months by

22  my diet. So it's really, really a concern. Cancer is

23  still in my body. The medical field knows this. Just

24  because it's not growing on an organ doesn't mean that it's

25  gone. It's enhanced by high blood sugar. My blood sugar

1  is stabilized, but I still have high blood sugar.  So I've

2  got serious health issues that require a CT scan.  I'm

3  supposed to see a physician assistant in St. Louis County

4  on the 29th.  He's aware of this.  But my understanding is

5  he has no ability to order this and that only the Judge may

6  order a CT scan.

7            THE COURT:  Why don't you let me appoint an

8  attorney to represent you and you can address those matters

9  with your attorney.  All right?

10            THE DEFENDANT:  I'm just concerned how long that

11  would take because another two months, if something has

12  attached and is growing.

13            THE COURT:  Let's take this one step at a time.

14  Okay?

15            THE DEFENDANT:  Okay.

16            THE COURT:  Let's appoint an attorney to

17  represent you first.  That attorney will know how to

18  petition the Court if there is something that needs to be

19  done with respect to your medical condition.  All right?

20            THE DEFENDANT:  Yes, Your Honor.

21            THE COURT:  Anything further?

22            MR. DELWORTH:  Not on behalf of the Government,

23  Your Honor.  Thank you.

24            THE COURT:  Anything further, Mr. Wolfe?

25            THE DEFENDANT:  I think you allowed me to say my

1  piece and I appreciate that latitude.

2  THE COURT:  And, Mr. Wolfe, don't ever let anyone

3  tell you in connection with this case proceeding that

4  there's something you can't do because it will make the

5  Judge angry.  All right?  I will tell you whether you can

6  or cannot do something and I will give you the reasons why

7  if my decision is that you cannot do it.  But my reasons

8  are not ever because you pissed me off.

9  THE DEFENDANT:  Cat's out of the bag is what he

10  told me.

11  THE COURT:  I understand.  I'm just telling you

12  on a go-forward basis.  I may not allow you to do

13  everything that you want to do, but generally I disallow

14  things for things that I think have a basis.  And I don't

15  usually disallow things because somebody has pissed me

16  off.

17  THE DEFENDANT:  I've seen compassion.  But, you

18  know, he told me in 45 years of practicing law, his two

19  worst days in court were on my case, one in front of

20  Judge Noce and one in front of you on the limine hearing.

21  So all I can tell you is at that time I made the decision,

22  but I had to do it based upon that information.

23  THE COURT:  All right.  Are we done here?

24  MR. DELWORTH:  Yes.

25  THE COURT:  So we will be adjourned on this

1 | matter.  The Court will appoint counsel to represent

2 | Mr. Wolfe subject to receiving a financial affidavit from

3 | him that demonstrates that he, in fact, qualifies for the

4 | appointment of counsel.  And as I said, if the Government

5 | feels that the information on there is incorrect, the rules

6 | apply -- the rules provide for partial payment or even

7 | reimbursement, and you know how to pursue that if you think

8 | it's well-justified.

9 | THE DEFENDANT:  I'm going to say one last thing.

10 | The day before the jury instruction, Mr. Lucco requested,

11 | and I had an attorney draw it up for me and I signed, a

12 | $200,000 promissory note for him, which was going to be his

13 | firm's cost to go forward to the end of the trial.  So I

14 | would have paid him money if it was there.  So that

15 | promissory note is still out there.

16 | THE COURT:  I understand.  Mr. Wolfe, these are

17 | all things that you can discuss with your attorney.  All

18 | right?

19 | THE DEFENDANT:  If Mr. Delworth thinks there's

20 | money, there's not money.

21 | THE COURT:  All right.  These are all things you

22 | can discuss with your attorney.  Okay?

23 | THE DEFENDANT:  Okay.

24 | THE COURT:  Thank you.  I'm not asking that you

25 | complete this financial affidavit.  Mr. Wolfe, I'm not

1    asking that you complete this financial affidavit, but we

2    will print one off for you just so that you can see the

3    information that it's going to request from you.  And here

4    is your letter back.

5                    (COURT WAS ADJOURNED AT APPROXIMATELY 10:40 A.M.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

24

1               REPORTER'S CERTIFICATE

2

3               I, Patti Dunn Wecke, Registered Merit Reporter,

4    hereby certify that I am a duly appointed official court

5    reporter of the United States District Court for the

6    Eastern District of Missouri.

7               I further certify that the foregoing is a true

8    and accurate transcript of the proceedings held in the

9    entitled cause, and a true and correct transcription of my

10   stenographic notes.

11              I further certify that this transcript,

12   containing pages 1 - 23 inclusive, was delivered

13   electronically and that this reporter takes no

14   responsibility for missing or altered pages of this

15   transcript when same transcript is copied by any party

16   other than this reporter.

17              Dated at St. Louis, Missouri, this 19th day of

18   December, 2021.

19                        /s/Patti Dunn Wecke, RMR, CRR, CMRS
                                Official Reporter
20

21

22

23

24

25