IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES WOLFE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00396-AGF |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Charles Wolfe's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Petitioner was charged in two separate indictments with other co-defendants, relating to multiple conspiracies that allege the illegal manufacture, sale, and distribution of analogue or synthetic drugs and other related violations. On May 21, 2014, Petitioner was charged in *United States v. Sloan*, *et. al*, No. 4:14-cr-00152-RWS (E.D. Mo. May 21, 2014) (the "*Sloan* case"). On June 5, 2014, Petitioner was charged in *United States v. Palmer*, *et. al*, No. 4:14-cr-00175-AGF (E.D. Mo. June 5, 2014) (the "*Palmer* case").[1]

The first indictment, the *Sloan* indictment, alleged Petitioner engaged in a conspiracy with twelve other individuals beginning in 2011, and ending around June of 2012. After the *Sloan* conspiracy ended, the *Palmer* indictment alleges Petitioner conspired with five other individuals, beginning in approximately December 2012 and

[1] All references to filings made in the underlying criminal cases will be identified as either "*Palmer* Crim. ECF No." or "*Sloan* Crim. ECF No."

continuing through at least September 2013. Petitioner was the only individual charged in both conspiracies. After the defendants other than Petitioner in the *Sloan* case, and three of the five other defendants in the *Palmer* case, had pled guilty or otherwise had their charges resolved, the Court, with consent of the parties, consolidated for trial the charges against Petitioner in the *Sloan* case with the charges against Petitioner and co-defendants Mark Palmer ("Palmer") and Samuel Leinicke in the *Palmer* case. *Palmer* Crim. ECF No. 361; *Sloan* Crim ECF No. 881.

On October 17, 2017, following a three-week trial, Petitioner was found guilty by a jury on all charges: conspiracy to distribute or possess with the intent to distribute Schedule I controlled substances or Schedule I controlled substances analogues intended for human consumption (Count One of both indictments); conspiracy to introduce and receive misbranded drugs in interstate commerce (Count Two of both indictments); and conspiracy to launder money (Count Three of both indictments). On July 5, 2018, Petitioner was sentenced to 186 months' imprisonment on Count One, 60 months' imprisonment on Count Two, and 120 months' imprisonment on Count Three, all such sentences to run concurrently, followed by three years of supervised release. Petitioner's conviction was affirmed on appeal.

In his pro se motion to vacate and set aside his conviction and sentence, Petitioner asserts eleven claims: nine claims of ineffective assistance of trial counsel, one claim of ineffective assistance of appellate counsel, and one claim of ineffective assistance of both trial counsel and appellate counsel. On May 8, 2024, the Court ordered that an evidentiary hearing be held with respect to three interrelated claims of ineffective

assistance of counsel: Ground I, asserting that trial counsel was ineffective for failing to provide the Court with evidence of Petitioner's innocence; Ground VI, asserting trial counsel was ineffective for failing to adequately investigate and secure the attendance of witnesses by subpoena; and Gound VII, asserting trial counsel was ineffective for failing to inform the Court of the prosecution's obstruction of a witness. The claims all primarily relate to the failure to present the testimony of attorney Timothy Dandar, who Petitioner claims provided legal advice on which Petitioner relied regarding the alleged criminal conduct.

Counsel was appointed to represent Petitioner, and the Court scheduled an evidentiary hearing for April 22-23, 2026. In the meantime, Petitioner filed a motion for compassionate release, which was re-docketed in the criminal cases. ECF No. 117. On September 13, 2024, the Court granted Petitioner's motion for compassionate release,[2] directing that he be granted supervised release on a home plan. Nevertheless, Petitioner advised he wished to go forward with his motion and the evidentiary hearing.

At the evidentiary hearing, Petitioner presented the testimony of several witnesses, including himself, co-defendant Palmer, attorney Dandar, and several of the attorneys who represented Petitioner or Palmer in the criminal trial. The Government presented the testimony of two of the attorneys who represented Petitioner and Palmer at trial. As discussed more fully below, Dandar appeared but provided no testimony. Rather, he

[2] As discussed further below, the Government did not oppose Petitioner's request for a sentence reduction.

exercised his Fifth Amendment right not to testify with respect to all questions asked of him.

For the reasons set forth below, Petitioner's motion to vacate, set aside, or reduce his sentence will be denied.

## BACKGROUND

### Criminal Investigation

The events leading to the filing of criminal charges in this case were recited in the final presentence investigation report ("PSR"), *Palmer* Crim. ECF No. 536; *Sloan* Crim. ECF No. 1131, and are summarized below. The Court finds that the facts in the PSR properly reflect the facts proven by the evidence in the case.[3]

The investigation into the underlying events began in 2012, when federal law enforcement agents became aware of a major synthetic drug manufacturing and distribution organization operating primarily in the Southern District of Illinois and the Eastern District of Missouri, distributing synthetic drugs in violation of the Controlled Substance Analogue Act, 21 U.S.C. § 813 ("the Analogue Act"). During the investigation, law enforcement identified Anwer Rao and Michael Lentsch, as the primary manufacturers and suppliers of synthetic drugs for the organization. Rao and

[3] Petitioner objected generally to the facts in the PSR, denying his involvement in general and more specifically objecting to the drug quantities giving rise to the Sentencing Guidelines calculations. *Palmer* Crim. ECF Nos. 527, 622. The Government presented further evidence of Petitioner's role and the drug quantities at the first portion of the sentencing hearing on June 1, 2018. *Palmer* Crim. ECF No. 708, Sentencing Tr. vol. 1 pp. 14-88. Based on the evidence at trial and at the sentencing hearing, the Court overruled Petitioner's objections to the facts in the PSR and the drug quantities, and adopted those facts. *Palmer* Crim. ECF No. 700, Sentencing Tr. vol. 2 pp. 21-29.

Lentsch owned several companies which were used to manufacture, market, and distribute various brands of synthetic drug products.

Although Rao and Lentsch marketed and sold their products through their own store fronts and the Internet, sometime around March 2010, they entered into an agreement with Greg Sloan to market and distribute the majority of their products through his established distribution network. Sloan also operated and owned several businesses in Missouri. Using these businesses and with the assistance of his co-defendants, Sloan marketed, sold, and distributed thousands of kilograms of synthetic drugs that he purchased from Rao and Lentsch.

Investigators also discovered that Sloan purchased synthetic drugs from and distributed synthetic drugs to Petitioner, who operated a business named Psychedelic Blur, LLC. Between March 2012 and July 2012, Petitioner, through Psychedelic Blur, sold synthetic drugs on behalf of Sloan and received approximately $2,481,726.40 in sales. Petitioner and the co-defendants utilized their business and personal financial accounts to launder approximately $18,203,456 in proceeds from their unlawful synthetic drug distribution operation.

On July 3, 2012, law enforcement executed search warrants at the defendants' business offices, warehouses, and storage units. As a result of these searches, law enforcement recovered various synthetic drugs and financial records of the criminal enterprise.

The investigation revealed that many of the defendants' customers included various gas stations, smoke shops, and small convenience stores. To induce the sale of

the synthetic drugs and evade prosecution, the defendants falsely and misleadingly referred to the synthetic drugs as "incense," "herbal incense," "potpourri," "herbal sachets," and other erroneous names when, in fact, the defendants knew that their products were synthetic drugs intended for human consumption in order to obtain the physiological effect similar to a controlled substance. The packages of synthetic drugs provided to retailers were misbranded because they did not contain adequate directions for use; were falsely labeled as "not for human consumption"; failed to accurately identify the contents of the product; failed to label the name and place of the manufacturer, packer, or distributor; and failed to include adequate warnings. In addition, the defendants provided some of their customers with laboratory reports that showed that the synthetic drugs being sold by the defendants were not listed as a Schedule 1 controlled substance; however, the defendants intentionally failed to show customers the laboratory reports that showed the synthetic drugs as controlled substance analogues.

After law enforcement executed search warrants, Sloan stopped his distribution operation. Petitioner used other suppliers temporarily between July 2012 and November 2012. Thereafter, in approximately November 2012, Palmer began manufacturing synthetic drugs from chemicals purchased from other countries, including China, and used Petitioner as a distributor. Palmer, together with Anthony Palmer and Leinicke, began operating several businesses and distributing numerous amounts of synthetic cannabinoids and synthetic cathinones to and through Petitioner.

In September 2013, search warrants were executed for Petitioner's residence, seven office locations in Bridgeton, Missouri (including the businesses of the defendants), several storage lockers, and a facility in Barnhart, Missouri. A large quantity of synthetic drugs was seized from each of these locations. Additionally, the records seized during the searches show that the defendants were using their businesses to launder the proceeds of their drug enterprise.

The investigation further revealed that Petitioner and other members of the conspiracy monitored various state laws and scheduling orders regulating these analogue substances. In reaction to scheduling changes, the defendants would purchase synthetic chemicals in which the molecular structure of the chemical had been slightly altered in order to manufacture and market synthetic drugs that were similar in chemical structure and in pharmacological effect as the newly scheduled synthetic drug. The defendants began labeling the products as "not for human consumption," in direct response to the Analogue Act's reference to a controlled substance analogue being intended "for human consumption." The investigation also showed that defendants were aware that the purchasers were ingesting the synthetic drugs to get high.

**Indictment**

As a result of the investigation in the *Sloan* and *Palmer* cases, a federal grand jury returned two indictments, charging Petitioner and other co-defendants with the following violations: conspiracy to distribute and possess with intent to distribute Schedule I controlled substances and Schedule I controlled substance analogues, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(C) and 813; conspiracy to commit offenses against

the United States, in violation of 21 U.S.C. § 371; and conspiracy to launder money, in violation of 18 U.S.C. §§ 1956(h) and 1957.[4] *Palmer* Crim. ECF No. 1; *Sloan* Crim. ECF No. 1.

J. William Lucco and Christopher P. Threlkeld were retained by Petitioner and entered their appearances on June 23, 2014.

**Discovery and Pretrial Motions**

Substantial pretrial proceedings were conducted in both cases, including motions to dismiss the indictment on grounds that the Analogue Act was unconstitutionally vague, which motions were denied. By May 23, 2017, all defendants in the *Sloan* case had pled guilty,[5] except for Petitioner. By May 5, 2017, defendants Anthony Palmer, Robert Wolfe, and Joseph Gabrick had pled guilty in the *Palmer* case, leaving only Petitioner, Palmer, and Leinicke as defendants.

On June 14, 2017, the Government filed a motion to consolidate for trial the charges against Petitioner in the *Sloan* case with the charges against Petitioner and defendants Palmer and Leinicke in the *Palmer* case. *Sloan* Crim. ECF No. 867; *Palmer* Crim. ECF No. 345. The Government contended that both trials would include nearly identical evidence, witnesses, testimony, and defendants, so consolidation would preserve resources. *Id*. At a hearing on August 4, 2017, defendants consented to the motion to

[4] Petitioner was not charged in Count Four in the *Sloan* case or in Counts Four or Five in the *Palmer* case.

[5] The charges against defendant David Neal were dismissed, on motion of the Government, on February 29, 2016. *Sloan* Crim. ECF No. 494.

consolidate. As such, the Court ordered that the charges against Petitioner in the *Sloan* case be transferred to the undersigned and consolidated for a joint trial with the *Palmer* case. *Sloan* Crim. ECF No. 881; *Palmer* Crim. ECF No. 361. The case was set for trial on September 25, 2017.

On June 30, 2017, the Government filed a motion *in limine* for notice of and to preclude the use of certain defenses and related arguments. *Palmer* Crim. ECF No. 346; *Sloan* Crim. ECF No. 762. The Government specifically sought to preclude the arguments of ignorance of law, mistake of law, advice of counsel, and entrapment by estoppel. *Id.* The Court denied the motion without prejudice, to the extent the Government was asserting that such defenses were precluded as a matter of law. *Palmer* Crim. ECF No. 393; *Sloan* Crim. ECF No. 915. At that time, the Court was unable to determine whether Petitioner could offer the defenses or evidence of such defenses without Petitioner proffering the evidence he was seeking to offer. The Court thus advised Petitioner to make such a proffer in a timely manner. *Palmer* Crim. ECF No. 434; *Sloan* Crim. ECF No. 963.

After the final pretrial conference and hearing, the Court held that Petitioner would not be able to raise any advice-of-counsel defense or offer evidence of the legal opinions provided to Petitioner or other co-defendants. *Id*. at 3. The Court expressed various concerns with the limited information offered by the defendants. For example, to the extent the opinion letters of attorney Dandar that defendants cited addressed federal law, they identified only whether a chemical substance was scheduled or unscheduled, and not whether the substance might be an illegal drug analogue. Further, defendants

failed to provide any evidence with respect to the information provided to Dandar in connection with the opinions. *Id*. The Court thus concluded that any probative value of the opinions of attorney Dandar would be far outweighed by their prejudicial impact and the risk of misleading the jury. *Id*. However, the Court still scheduled a proffer hearing for October 6, 2017, to allow the defense to make a prima facie showing of admissibility. *Id*.

In an attempt to satisfy the Court's requirement that defendants show that they provided Dandar with complete information and that Dandar in fact provided them with pertinent advice, counsel for defendants indicated that Dandar would be available to appear for a hearing. *Palmer* Crim. ECF No. 689, Trial Tr. vol. VII pp. 6–7; *Palmer* Crim. ECF No. 626, Trial Tr. vol. IX, pp. 213–14. Defense counsel brought Dandar to St. Louis as a defense witness. *Palmer* Crim. ECF No. 627, Trial Tr. vol. X, p. 113. However, at the hearing, defense counsel notified the Court that Dandar was at the airport and was flying back to Florida. *Id.* at 114. Dandar had informed counsel that should he be compelled to testify, he would assert his Fifth Amendment rights. *Palmer* Crim. ECF No. 658, Trial Tr. vol. XII, p. 6. Defendants accepted this representation and did not request that any further record of the refusal to testify be made. Ultimately, the Court granted the Government's motion *in limine* to exclude Dandar's testimony and any advice-of-counsel defense because Dandar would invoke his Fifth Amendment rights if he was called to testify. *Palmer* Crim. ECF No. 434; *Sloan* Crim. ECF No. 963. Defendants did not specifically identify any other attorneys who had purportedly provided advice of counsel.

**Jury Trial**

Petitioner's jury trial began on September 26, 2017. Following a three-week jury trial, Petitioner was found guilty on all charges. *Palmer* Crim. ECF No. 444; *Sloan* Crim. ECF No. 985.

**Post-Trial Motions**

On November 20, 2017, Petitioner and co-defendants Palmer and Leinicke filed a joint motion for a new trial. In their motion, they argued that the Court erred by (1) granting the Government's motion *in limine* barring defendants from raising the defense of advice of counsel; (2) disallowing the defendants' expert from presenting his entire exhibit which contained the complete basis for his opinions; (3) giving a jury instruction (Jury Instruction 32), as it "went beyond explaining the law and veered into a jury director based upon the Government's evidence at trial"; (4) denying the defendants' motion to exclude evidence regarding defendants' failure to file tax returns; and (5) allowing the Government to present a burden shifting argument that violated defendants' due process rights. *Palmer* Crim. ECF No. 463; *Sloan* Crim. ECF No. 1055. The Court denied defendants' motion for new trial on February 2, 2018. *Palmer* Crim. ECF No. 572; *Sloan* Crim. ECF No. 1145.

**Sentencing**

The Court held a sentencing hearing on June 1, 2018 and July 5, 2018. Petitioner was sentenced to a term consisting of 186 months on Count One under both the *Palmer* and *Sloan* indictments; 60 months on Count Two under both the *Palmer* and *Sloan* indictments; and 120 months on Count Three under both the *Palmer* and *Sloan*

indictments, all such terms to be served concurrently, followed by three years of supervised release. *Palmer* Crim. ECF No. 683; *Sloan* Crim. ECF No. 1252, Sentencing Tr. vol. II pp. 69–70.

**Direct Appeal**

On July 17, 2018, Petitioner filed an appeal to the Eighth Circuit Court of Appeals, specifically as to this Court's denial of his motions to dismiss indictments for conspiracy to violate the Controlled Substance Analogue Act, and the Court's grant of the motion *in limine* preventing Petitioner from presenting an advice-of-counsel defense at trial. Petitioner's convictions were affirmed on August 6, 2019. *United States v. Wolfe*, 781 F. App'x 566 (8th Cir. 2019). On de novo review, the Eighth Circuit held that "a reasonable jury could not have found that [Petitioner] both (1) fully disclosed all material facts to his attorney before seeking the legal opinion and (2) relied on that opinion in 'the good faith belief that his conduct was legal.'" *Id.* at 568. Petitioner's petition for rehearing en banc was denied on September 18, 2019, and his petition for a writ of certiorari with the United States Supreme Court was denied on March 23, 2020, rendering the conviction final.

**Motions to Vacate and for Compassionate Release**

Petitioner filed a pro se motion to vacate, set aside, or correct sentence on March 30, 2021, an amended motion on April 2, 2021, and a motion to supplement his motion to vacate on April 26, 2021. ECF Nos. 1, 6, 8. The motion for leave to amend and supplement was granted on May 11, 2021. Thereafter, Petitioner began to file a flurry of motions. The Government filed its response on June 28, 2021 (ECF No. 19), and

Petitioner filed a reply on August 10, 2021 (ECF No. 28). The Court ruled on Petitioner's various outstanding motions, including motions requesting transcripts and various documents, on October 21, 2021. At that time, Petitioner's motion for appointment of counsel was denied without prejudice to refiling (ECF No. 39), and Petitioner continued to file pro se motions thereafter. On September 22, 2023, Petitioner filed a motion for appointment of counsel "for the limited purpose of assisting in the scheduling process for the requested evidentiary hearing." ECF No. 99.

In his § 2255 motion now before this Court, Petitioner asserts eleven grounds of ineffective assistance of counsel, as follows:[6]

Ground I: trial counsel, for failing to provide the Court with evidence of his innocence;

Ground II: trial counsel, for failing to timely object to improper jury instructions;

Ground III: trial counsel, for failing to object to a constructive amendment of the indictment placed in the jury instructions;

Ground IV: appellate counsel, for failing to specifically list in the appellate brief's Statement of Issues the Court's Order precluding mention of legal advice received from attorneys, which Petitioner argues prevented him from pursuing a good-faith defense on direct appeal;

---

[6] As noted above, in addition to his initial § 2255 motion, ECF No. 6, Petitioner filed amended and supplemental briefs which added several claims and developed his arguments. ECF Nos. 1, 2, 8.

Ground V: appellate counsel, for failing to recognize objections were raised and arguments were properly preserved for appeal;

Ground VI: trial counsel, for failing to adequately investigate and secure the attendance of witnesses by way of subpoena;

Ground VII: trial counsel, for failing to inform the Court of prosecution's obstruction of a witness;

Ground VIII: trial counsel, for failing to invoke a Fifth Amendment violation of double jeopardy;

Ground IX: trial counsel, for failing to "follow the Court's directive to offer other basis or foundation, to establish the framework" when cross examining one of the Government's witnesses, and failing "to correlate believe and belief with the scienter requirement and mental state of defendant in an Analogue prosecution, prohibit[ing] [Petitioner] from conveying actual innocence to the jury" (ECF No. 2 at 1).

Ground X: trial counsel, for failing to directly object to the Court's ruling after receiving a note from the jury.

Ground XI: trial and appellate counsel, for failing to object to a plain error in the indictments and jury instructions, which created a faulty indictment.

ECF Nos. 1, 2, 6, 8. In response, the Government asserts that each of Petitioner's claims are refuted by the record and lack merit.[7] ECF No. 19.

[7] The Government did not address Grounds IX and X in its response, arguing that that Petitioner's motion was not entirely clear and that these Grounds reflect unrecognized claims. ECF No. 19 at 5 n.1.

After reviewing all of the parties' filings, the Court determined that material issues of fact could not be resolved on the record with respect to Grounds I, VI, and VII (all relating to Petitioner's advice-of-counsel defense), and an evidentiary hearing was ordered with respect to those claims only. ECF No. 104.

The Court initially scheduled the evidentiary hearing for July 24, 2024. The Court gave Petitioner until May 22, 2024 to supplement his request for the appointment of counsel to represent him at the hearing, to include an affidavit reading Petitioner's financial ability to retain counsel. *Id*. On May 10, 2024, the Court appointed attorney Joseph Whitener to represent Petitioner. ECF No. 105. On May 21, 2024, Petitioner filed a motion to modify the Court's May 10th Order, clarifying that he requested the appointment of "Standby Counsel only, to assist Petitioner in obtaining court documents, to compel witnesses presence and assistance in acquiring other relevant evidence," and further asserting that "Petitioner alone is the one capable of thoroughly elucidating his claims for the due administration of justice." ECF No. 106.

Although it was unclear to the Court whether a *Faretta*[8] hearing was required in these circumstances, out of abundance of caution, the Court set a hearing with Petitioner and his appointed counsel to ensure that Petitioner was aware of the consequences of proceeding pro se. ECF No. 108. At the hearing, held on July 8, 2024, Petitioner changed his mind and stated that he did in fact want to have attorney Whitener represent him. As such, Petitioner's motion to modify the Court's order appointing counsel was

[8] *Faretta v. California*, 422 U.S. 806 (1975).

dismissed as moot, and at the request of Petitioner, the evidentiary hearing was continued. ECF No. 119.

In the meantime, Petitioner filed a motion for compassionate release, under 18 U.S.C. § 3582(c)(1)(A), which was re-docketed in the *Palmer* and *Sloan* cases. ECF No. 117. During Petitioner's six years in prison, his medical condition significantly worsened, and the Government did not contest his request for release because he no longer posed a threat to the community. On September 13, 2024, the Court granted Petitioner's motion for compassionate release in his underlying criminal cases, directing that he be released to supervised release on a home plan. In light of that Order, the Court directed that counsel confer and advise whether Petitioner intended to go forward with the evidentiary hearing, then scheduled for October 1, 2024. Counsel for Petitioner requested that the evidentiary hearing be continued. ECF No. 123.

The following day, attorney Whitener filed a motion for leave to withdraw, based on a pro se filing by Petitioner in which he asserted created an irreparable conflict of interest. ECF No. 124. Further, a different attorney had entered an appearance on Petitioner's behalf. Finding that the attorney entered only for the limited capacity of filing matters related to the request for compassionate release, the Court denied attorney Whitener's motion to withdraw as counsel. ECF No. 126. At Petitioner's request, the Court held an in-person status conference on October 1, 2024. ECF No. 128. Following that conference, the evidentiary hearing was rescheduled for March 24, 2025. ECF No. 130.

On February 26, 2025, Petitioner filed a pro se motion for a status conference, in which he asserted that he and attorney Whitener "mutually agreed" that their attorney-client relationship was irretrievably broken. ECF No. 132. The Court granted the motion and held a status conference on March 6, 2025, a portion of which was held ex parte, at which Petitioner requested that attorney Whitener be relieved as counsel and that Petitioner be appointed another CJA attorney. Petitioner represented to the Court that he had spoken with attorneys on the panel who were already familiar with the case, and who could, therefore, represent him more efficiently. He further represented that he was not prepared to proceed with the evidentiary hearing set for March 24, 2025. The Court granted the motion to remove counsel, vacated the evidentiary hearing, and gave Petitioner's new counsel or Petitioner two weeks to file an update regarding the status of Petitioner's representation. ECF No. 137.

On March 12, 2025, attorney David Bruns – who had been requested by Petitioner – filed a notice that he would accept a CJA appointment on the habeas petition. ECF No. 138. At Petitioner's request, the Court appointed attorney Bruns.[9] Following another status conference, at which time the Court granted the parties time to ascertain the availability of witnesses, the evidentiary hearing was rescheduled for October 27, 2025 (ECF No. 147), and thereafter continued on Petitioner's motion to April 22, 2026 (ECF No. 150).

---

[9] Contrary to the Court's normal practice of appointing new counsel randomly from the panel, in light of the complexity of the case and to avoid further unnecessary delay, the Court appointed an attorney from the panel that Petitioner selected.

**Evidentiary Hearing**

On April 22 and 23, 2026, the Court held an evidentiary hearing on Grounds I, VI, and VII. Central to these claims is Petitioner's assertion that attorney Dandar was wrongfully prevented from testifying at the proffer hearing, due to alleged misconduct by the prosecutors and the failure of defense counsel to subpoena Dandar to testify.

At the hearing, Petitioner called himself; co-defendant Mark Palmer; attorney Dandar; Petitioner's brother-in-law, Dean Graver; attorney Scott Rosenblum, attorney Bill Lucco, and Petitioner's friend, Paul Lavista, as witnesses. ECF No. 158. The Government called attorneys Christopher Threlkeld and Shelby Cowley as their witnesses. As noted above, Threlkeld and Lucco were Petitioner's attorneys in the underlying criminal trial. Cowley and Rosenblum represented co-defendant Palmer in that trial.

First, Dandar appeared to testify. However, once he took the stand, he invoked his Fifth Amendment rights and refused to answer any question asked of him. Next, Palmer testified about events surrounding a meeting that occurred between the Government and his attorneys in connection with the proffer hearing. Palmer stated that he saw his attorneys meet with the Government, and that afterwards, his attorneys told him that during the meeting, the Government's attorneys allegedly threatened Dandar. However, Palmer later testified that the ultimate reason why Dandar did not appear to testify was because Petitioner told Dandar that he could leave town.

Next, Petitioner testified as to his recollection of events surrounding the trial and proffer hearing. Petitioner testified as to the steps he himself took to ensure compliance

with the law. For example, he tried to determine when compounds were scheduled as controlled substances and would destroy any product he had once it became a scheduled controlled substance. He discussed his relationship with Dandar and how Dandar had acted as his attorney. He testified that he spoke with Dandar before he left town at the time of the proffer hearing, and they discussed what Dandar should do. Petitioner testified that he asked Dandar whether Dandar was under subpoena, and when Dandar said he was not, Petitioner indicated that Dandar would not be legally required to stay. Petitioner did not ask his attorneys to follow up with Dandar when Dandar did not appear for the proffer hearing.

Lastly, several of Petitioner's and Palmer's trial attorneys testified as to their recollection of the meeting with the Government regarding the proffer hearing. They stated that the Government did not threaten to indict Dandar. They also discussed their interactions with Dandar and their clients during the events surrounding the proffer hearing. They testified that the reason they did not try to pursue a writ of attachment or other remedies with respect to Dandar after he decided to leave town was because their clients, Petitioner and Palmer, did not want them to pursue the matter. Shelby Cowley, counsel for Palmer, confirmed that she had in fact subpoenaed Dandar to testify.

## DISCUSSION

### Legal Standard

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to

impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." A petitioner's ineffective assistance of counsel claim is properly raised under § 2255 rather than on direct appeal. *United States v. Davis*, 452 F.3d 991, 994 (8th Cir. 2006) (citation omitted).

To prevail on an ineffective assistance of counsel claim, a petitioner must first show counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). The petitioner must also establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Both parts of the *Strickland* test must be met in order for an ineffective assistance of counsel claim to succeed. *Anderson v. United States*, 393 F.3d 749, 753 (8th Cir. 2005). The first part of the test requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* (citation omitted). Review of counsel's performance by the court is "highly deferential," and the court presumes "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (citation omitted) The court does not "second-guess" trial strategy or rely on the benefit of hindsight, *id.*, and the attorney's conduct must fall below an objective standard of reasonableness to be found ineffective, *United States v. Ledezma–Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005). If the underlying claim (*i.e.*, the alleged deficient performance) would have been rejected, counsel's performance is not deficient. *Carter v. Hopkins*, 92 F.3d 666, 671 (8th Cir. 1996). Courts seek to "eliminate the distorting effects of hindsight" by examining

counsel's performance from counsel's perspective at the time of the alleged error. *O'Neil v. United States*, 966 F.3d 764, 771 (8th Cir. 2020).

The second part of the *Strickland* test requires that the movant show that he was prejudiced by counsel's error, and "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Anderson*, 393 F.3d at 753–54 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. When determining if prejudice exists, the court "must consider the totality of the evidence before the judge or jury." *Id.* at 695; *Williams v. United States*, 452 F.3d 1009, 1013 (8th Cir. 2006).

**A. Evidentiary Hearing Claims**

The Court will first consider Grounds I, VI, and VII, which were addressed at the evidentiary hearing. These grounds, while distinct, relate to Petitioner's allegation that if he had been allowed to present evidence as to his advice-of-counsel defense, and particularly the testimony of attorney Dandar, he would have been found innocent. The evidence and testimony presented at the hearing and in the record before the Court demonstrate that these claims should be denied.

**Ground I: trial counsel's failure to provide evidence of actual innocence**

Petitioner contends that his counsel was ineffective by failing to provide the Court with evidence of his actual innocence, which, in this instance, refers to his rejected advice-of-counsel defense and his related argument that the evidence showed he lacked the necessary *mens rea*. ECF No. 1 at 10-11. Petitioner argues that had his counsel not

withheld evidence relating to advice Petitioner received from his attorney, the Government's motion *in limine* precluding the use of an advice-of-counsel defense would have been denied and he would have otherwise been found innocent.

As a threshold matter, the Court notes that Petitioner appealed this Court's refusal to permit evidence of the attorney opinions to the Eighth Circuit, which affirmed those orders. *Wolfe*, 781 F. App'x at 569 ("The district court therefore properly granted the Government's motion *in limine* to prohibit [Petitioner] from raising an advice-of-counsel defense at trial."). The controlling caselaw recognizes that that "[c]laims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." *Thompson v. United States*, 872 F.3d 560, 565 (8th Cir. 2017) (citation omitted); *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981).

Additionally, Petitioner claims that he should have been allowed to present evidence of the advice he received and what impact it had on his *mens rea* for the alleged crime. ECF No. 1 at 20. Specifically, he claims that he did not know that the substances he was manufacturing had a similar chemical structure to controlled substances. This precise argument was also raised on appeal and rejected by the Eighth Circuit. *Wolfe*, 781 F. App'x at n.2. ("The district court concluded that the probative value of the letters was far outweighed by their prejudicial impact and the risk of misleading the jury," and "the district court did not abuse its discretion by excluding [the letters] from evidence.") (internal quotations omitted). As such, this claim also cannot be relitigated via a § 2255 motion. *Shabazz*, 657 F.2d at 190.

Erring on the side of caution, the Court granted an evidentiary hearing on the issue. ECF No. 104. The evidence and testimony presented at the hearing confirm that Petitioner's claim must be denied.

At the hearing, Petitioner testified about the evidence he claims would have proven he lacked the requisite *mens rea*. He stated that he consulted with attorney Dandar to find out if the substances he was making were legal by sending Dandar lab reports which Dandar used to generate opinion letters. He also claimed that he talked to various other persons in the industry about compliance measures.

Initially, the Court finds that Petitioner has not shown that his trial counsel failed to do anything that might constitute ineffective assistance. With respect to the advice received by persons other than Dandar, Petitioner did not offer any evidence as to such other persons' qualifications to offer opinions on the legality of the products under the Analogue Act, what information Petitioner had provided to those persons, or any specific opinions given with respect to the controlled substance analogues charged in the indictment. As such, Petitioner has failed to identify any evidence other than the Dandar opinion letters that counsel failed to offer. And trial counsel did in fact offer the Dandar opinion letters, but that request was rejected.

Further, the evidence does not support Petitioner's claim that he lacked the necessary *mens rea*. At the hearing, Petitioner testified he knew his products were being marketed as things like potpourri or incense and labelled as unfit for human consumption, but that he also knew that the vast majority of people purchasing his products were not using them as incense but instead were ingesting them to get high. He stated that

whenever a substance he was manufacturing and selling became *scheduled* under federal law, he would stop making and selling that substance. Importantly, however, Petitioner provided no testimony whatsoever regarding his knowledge with respect to whether any of the substances he distributed would qualify as prohibited drug analogues.

Under the Controlled Substances Act, a controlled substance analogue is a substance (1) that has a substantially similar chemical structure to a controlled substance, (2) that has a substantially similar effect as a controlled substance, or (3) that a person represents or intends to have a substantially similar effect as a controlled substance. 21 U.S.C. § 802(32)(A). Additionally, the Analogue Act, 21 U.S.C. § 813, states, "[a] controlled substance analogue shall, to the extent intended for human consumption, be treated, . . . as a controlled substance in schedule I." The statute lists factors for determining whether a substance is intended for human consumption: (1) the marketing and labeling of the substance; (2) the usefulness of the substance for its marketed purpose; (3) the price at which the substance is sold; (4) the diversion of the substance from legitimate channels; (5) if the defendant knew or should have known the substance was intended to be consumed; and (6) if it is manufactured, formulated, sold, distributed, or marketed with the intent to avoid existing drug laws. 21 U.S.C. § 813(b).

The evidence and testimony demonstrate that Petitioner possessed the requisite *mens rea* because he was aware of the effects and dangers of his products. He knew the products were packaged and marketed in a provocative manner, with labels like "Mad Hatter," "Crazy Eyes," and "DEEW" (weed spelled backward), not at all consistent with incense; knew the people lining up to buy his products were ingesting them to obtain the

physiological effect similar to a controlled substance; and knew that they were dangerous. Additionally, he attempted to avoid existing drug laws by switching to a slightly different chemical compound each time one of his substances became scheduled.

As for the opinion letters by attorney Dandar – the only opinions offered by Petitioner – they each specifically state they are not recommendations that the product is safe for human consumption. Further, with respect to federal law, the opinion letters only identify whether a particular product has been scheduled; they offer no opinion with respect to whether any of the products might be prohibited as controlled substance analogues. Indeed, the opinion letters should have put Petitioner on notice that the products might be illegal controlled substance analogues as the letters show the legal status of the substances Petitioner was manufacturing in various states, and in some states where the law covers analogues, the legal status of the substance is listed as "risky." *E.g.*, *Palmer* Crim. ECF No. 406-1.

As such, evidence, including that presented at the evidentiary hearing, shows that Petitioner was adequately aware of the dangers that the substances he was dealing in presented, that people were in fact using his products to get high, and that the products were potentially harmful. Thus, counsel was not ineffective for failing to provide the Court with evidence of Petitioner's actual innocence as to Petitioner's *mens rea*.

**Ground VI: trial counsel's failure to adequately investigate and secure the attendance of witnesses by subpoena.**

Petitioner asserts that his counsel was ineffective for failing to call and to subpoena the following witnesses: himself, Dandar, Karen Carter, "J.D. from OK,"

Gregory Sloan, Roy Ehrett, Paul Lavista, Pamela Brink, Peter Brooks, and Lisa MacInnes. ECF No. 1 at 8. On this record, Ground VI also fails.

Petitioner's first argument, that his trial counsel refused to call him as a witness, is refuted by the record. At trial, the Court had the following colloquy with Petitioner and his attorney as to his decision not to testify:

> THE COURT: At this time I think it is appropriate for … me to have a conversation with each of the defendants about your right to testify. …
>
> *****
>
> THE COURT: Mr. Lucco, Mr. Threlkeld, I know that you have had discussions with Mr. Wolfe as well. Has he made a determination whether to testify?
>
> MR. LUCCO: We've had many discussions, Your Honor, over many opportunities to do so. And with the dynamics of the trial and witnesses and testimony and rulings and so forth, and I think all having been said, Mr. Wolfe has decided today not to testify.
>
> *****
>
> THE COURT: All right. Gentlemen, I know that you have all had the opportunity to discuss this decision with your attorney. Is there any of you who -- do you each believe you've had sufficient time to discuss this decision with your attorney?
>
> *****
>
> THE COURT: Mr. Wolfe?
>
> MR. WOLFE: Yes, Your Honor.
>
> *****
>
> THE COURT: Now, I just want to talk to you about this for just a minute, because obviously you have all discussed this with your attorneys, you've had an opportunity to ask any questions you want and fully explore the issue with your attorneys. And you have experienced attorneys, and it is -- we

> obviously want you to solicit and listen to the advice of your attorney. But the ultimate decision whether you testify or do not testify in a case is yours. It is not a decision to be made by your attorney, it is not a decision to be made by family members, friends, or anybody else. Only one person ultimately should make that decision and that person is you.
>
> *****
>
> THE COURT: All right. And Mr. Wolfe, you understand this is solely your decision to make, no one else's, no family member, no attorney, no one else. You understand this is solely your decision to make, sir?
>
> MR. WOLFE: One hundred percent, yes, Your Honor.
>
> *****
>
> THE COURT: And after having an opportunity to discuss this matter with your attorney, is it, in fact, your decision and choice not to testify in this case?
>
> MR. WOLFE: Yes, Your Honor.
>
> *****
>
> THE COURT: Mr. Wolfe, are you satisfied with the representation that you have received from your attorneys in this case?
>
> MR. WOLFE: Yes, Your Honor.
>
> THE COURT: Including the representation and advice that they have given you with respect to whether you should or should not testify?
>
> MR. WOLFE: Yes, Your Honor.

*Palmer* Crim. ECF No. 660, Trial Tr. vol. XIV, pp. 18–23.

However, at the evidentiary hearing, Petitioner attempted to recant these sworn representations. Specifically, Petitioner testified that he lied when he said he was satisfied with his decision not to testify and his counsel's representation. He stated that his attorney told him not to testify because the Court granted the Government's motion *in*

*limine* prohibiting the advice-of-counsel defense. He claimed that his attorneys told him that if he testified, it would annoy the judge. Petitioner further testified that his trial counsel, Lucco, advised him to lie when the Court asked him the above questions.

At the evidentiary hearing, several of Petitioner's trial attorneys testified regarding this issue. They testified that contrary to Petitioner's assertation, they did not tell him that he could not or should not testify. They stated that they informed Petitioner that he would not be allowed to opine on issues related to the advice-of-counsel defense because of the Court's ruling on the motion *in limine* but that the decision whether or not to testify was for Petitioner to make. Attorney Lucco specifically denied telling Petitioner to lie to the Court with respect to these matters.

"The assessment of a witness's credibility is the province of the trial court." *United States v. Coney*, 456 F.3d 850, 860 (8th Cir. 2006) (quoting *United States v. Heath,* 58 F.3d 1271, 1275 (8th Cir. 1995)). Having heard the testimony at the evidentiary hearing, and having had the opportunity to observe the demeanor of the witnesses, the Court credits the testimony of the trial attorney witnesses over that of Petitioner. And their testimony is consistent with Petitioner's testimony, under oath, at the time of trial. The credible testimony demonstrates that Petitioner's trial counsel was not ineffective with respect to Petitioner's decision not to testify. Petitioner's trial counsel simply informed Petitioner of how the Court's ruling on the motion *in limine* would impact the scope of any potential testimony by Petitioner.

Second, Petitioner argues that his counsel was ineffective for failing to investigate and subpoena witnesses that he requested. Petitioner focuses a large portion of his

argument on the claim that counsel was ineffective because of their failure to subpoena Dandar. He claims that this was the reason that Dandar chose not to appear at the proffer hearing. The testimony from the evidentiary hearing also refutes this claim.

Petitioner and Palmer both testified that Dandar did not appear in Court because Petitioner indicated Dandar could leave St. Louis and not testify if he chose. Furthermore, the trial attorneys testified that when they were considering possible remedies for Dandar's failure to appear, their clients—Petitioner and Palmer—told them not to pursue any recourse. Their testimony is corroborated by Petitioner's and Palmer's testimony. Palmer testified that Petitioner told Dandar he could leave. The attorneys cannot be deemed ineffective for obeying the express directive of their clients.

To the extent that Petitioner complains that trial counsel failed to subpoena Dandar, and contends that the only reason he indicated that Dander he could leave town is because of the lack of a subpoena, this argument also fails. At the evidentiary hearing, Palmer's trial attorney, Cowley, testified under oath that she had subpoenaed Dandar. This is consistent with the representation that defense counsel made during the trial, in connection with the proffer, and Petitioner did not contradict that representation at the time.[10]

---

[10] Following the close of briefing and the evidentiary hearing on Petitioner's § 2255 motion, Petitioner filed a motion to compel Cowley to file a copy of the executed subpoena(s). ECF No. 164. As an initial matter, Petitioner's motion comes too late, Petitioner was represented by the counsel of his choice at the evidentiary hearing and had every opportunity to request that Cowley bring to the hearing the subpoenas and/or any other documents that Petitioner wished to see. He did not do so. Cowley is not a party to this proceeding, she was not Petitioner's attorney at the trial, the evidentiary hearing at which she was a witness has long passed, and briefing on Petitioner's § 2255 has closed.

Moreover, regardless of whether Dandar was subpoenaed, the record before the Court demonstrates that even if Dandar had testified at the proffer hearing, he would have invoked his Fifth Amendment rights. Counsel is not ineffective for failing to call a witness when that witness intends to invoke his or her Fifth Amendment rights. *Williams v. Kemna*, No. 4:03CV876 JCH, 2006 WL 1892539, at *3 (E.D. Mo. July 10, 2006) ("Trial counsel did not act unreasonably when failing to call to the stand a witness who had stated that he intended to invoke his Fifth Amendment rights."). Dandar told Petitioner and the trial attorneys that he would invoke his Fifth Amendment rights if he was called to testify. *Palmer* Crim. ECF No. 627, Trial Tr. vol. X, p 4. Consistent with that declared intent, when Dandar did appear at the evidentiary hearing, he invoked his Fifth Amendment rights whenever he was asked a question. As such, defense counsel was not ineffective.

Lastly, Petitioner claims that counsel was also ineffective for failing to subpoena and call other witnesses to testify at the trial. These potential witnesses include Dr. Karen Carter, "J.D. from OK," Gregory Sloan, Roy Ehrett, Paul Lavista, Pamela Brink,

---

For these reasons, the Court will deny Petitioner's motion to compel. But even if Petitioner could show that Cowley was untruthful when she testified that she subpoenaed Dandar (which is doubtful), he has not shown that a failure to subpoena Dandar was ineffective. This is because, as discussed below, Petitioner has provided no evidence as to how Dandar would have testified had he been subpoenaed. *See, e.g.*, *Armstrong v. Kemna*, 534 F.3d 857, 867 (8th Cir. 2008) (noting that "a defendant's failure to present some evidence from the uncalled witness regarding that witness's potential testimony" is ordinarily "fatal" to an ineffective assistance of counsel claim). The evidence before this Court indicates that Dandar would only have invoked his Fifth Amendment privilege, as he ultimately did at the evidentiary hearing, which certainly would not have changed the outcome of the trial.

Peter Brooks, and Lisa MacInnes. ECF No. 1 at 8. Petitioner alleges his counsel decided that issuing all of the subpoenas was "not feasible" without additional resources. *Id.* at 9.

Again, "[t]o prove prejudice from [counsel's] failure to investigate potential witnesses, a petitioner must show that the uncalled witnesses would have testified at trial and that their testimony would have probably changed the outcome of the trial." *Stewart v. Nix*, 31 F.3d 741, 744 (8th Cir. 1994) (citation omitted). "The Eighth Circuit gives great deference to counsel's judgment in selecting witnesses." *Broeker v. United States*, No. 4:22CV457 HEA, 2025 WL 18634, at *3 (E.D. Mo. Jan. 2, 2025) (quoting *Hanes v. Dormire*, 240 F.3d 694, 698 (8th Cir. 2001)).

Here Petitioner fails to articulate what any of these other named witnesses would have testified to had they been called as witnesses. The Court notes that several of these witnesses pled guilty to these same charges. As such, there is no basis on this record to believe that these witnesses had any exculpatory testimony or that their testimony would have changed the jury's verdict in this case. *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005) ("The decision not to call a witness is a 'virtually unchallengeable' decision of trial strategy.") (citation omitted).

**Ground VII: trial counsel's failure to inform the Court of the Government's alleged obstruction of witness Dandar**

Petitioner argues that the Government obstructed Dandar from proffering testimony, which resulted in his conviction. Petitioner asserts that he asked his counsel to alert the Court of the obstruction and suggested a video proffer to overcome the Government's obstruction. ECF No. 1 at 12. He claims that his counsel was ineffective

for failing to inform the Court about this alleged obstruction. Petitioner's claim is refuted by the record.

Petitioner claims that the Government prevented witness Dandar from testifying at the proffer by threatening to indict him if he did so. To support this claim, Petitioner produced an affidavit by Palmer, in which Palmer states that he overheard a conversation between his attorneys and the Government's attorneys. ECF No. 92. Palmer's affidavit states that the Government's attorneys discussed indicting Dander if he appeared to testify, and that Dander decided not to testify after he was informed that he might be indicted. *Id.* In response, the Government claims that Palmer's affidavit is inaccurate. They produced an affidavit from Palmer's counsel, Cowley, who states that the Government never threatened to indict Dandar. ECF No. 98-1. She further asserts that the Government's attorneys stated they had no idea if they would indict Dandar and that they would have to see what Dandar had to say during his proffer. *Id.*

The evidence and testimony presented at the evidentiary hearing demonstrates that the Government did not prevent Dandar from testifying at the proffer hearing. First, the Court heard conflicting testimony regarding a meeting that occurred regarding the proffer hearing. At the hearing, Palmer did not recount any discussion he heard between the Government's attorneys and defense counsel. He testified that he heard his attorneys say that the Government's attorneys threatened to indict Dandar if he testified. This, of course, is double hearsay. Moreover, Palmer's trial attorneys testified that this is not what happened. Attorney Cowley testified that she asked the Government's attorneys whether they intended to indict Dandar, and they simply stated that they did not know

what Dandar would testify about and that they would have to hear Dandar's testimony before deciding whether to take further action. Moreover, the Palmer affidavit lacks credibility because Palmer testified at the evidentiary that the pertinent paragraphs of his affidavit were in fact written by Petitioner when they were housed at the same facility, and that Palmer simply signed it.

Having had a chance to examine the record and observe the testimony and demeanor of Petitioner, Palmer, and the trial attorney witnesses at the evidentiary hearing, the Court finds the trial attorneys' statements credible. *Coney*, 456 F.3d at 860 ("The assessment of a witness's credibility is the province of the trial court.") (quoting *Heath,* 58 F.3d at 1275)). As such, the Court concludes that the Government did not act improperly and did not prevent Dandar from testifying, and Petitioner's attorneys were not ineffective for failing to raise this issue.

Second, as previously discussed, the testimony provided at the evidentiary demonstrates that the reason why Dandar did not attend the proffer hearing was because Petitioner told him that he could leave and did not have to testify. Petitioner and Palmer both testified that Petitioner indicated that Dandar could leave town and not testify. This testimony is further corroborated by the defense attorneys who stated that the reason they did not try to get a writ of attachment or compel Dandar to testify after he decided not to appear was because their clients did not want them to pursue such actions. Thus, it was Petitioner's own actions that prevented Dandar from testifying. And as noted above, Petitioner has not provided any evidence as to what Dandar would have said if he

testified. The only evidence before this Court suggests that Dandar would have invoked his Fifth Amendment rights, which would not have affected the outcome of trial.

**<u>Remaining Grounds</u>**

**<u>Ground II: trial counsel's failure to timely object to improper jury instructions</u>**

Petitioner contends that his counsel was ineffective by failing to object to the Court holding jury instruction conferences off the record and outside of his presence, and failing to raise an objection to the instruction regarding the Analogue Act, Jury Instruction 32. ECF No. 1 at 11. Both of these points are refuted by the record.

The only discussions held off the record were preliminary discussions to have counsel identify what instructions might be at issue. Petitioner was present at the final jury instruction conference where the instructions were discussed. *Palmer* Crim. ECF No. 661, Trial Tr. vol. XV pp. 3–28.

As to Jury Instruction 32, Petitioner's counsel for Petitioner *did* object to the language of that instruction as follows:

> MR. THRELKELD: Your Honor, just for the record we would object to the language starting from the sentence circumstantial evidence.
>
> THE COURT: But we talked about it on Friday and you had no objection then. We sent it to you Saturday and you had no objection then. So you have had two opportunities prior to this moment to object to adding that language and you said it was okay both of those times, correct?
>
> MR. THRELKELD: Yes, Your Honor.
>
> THE COURT: But now you're objecting to it, so tell me the basis of your objection.
>
> MR. THRELKELD: The objection is that it's just to the suggestive nature of the language that's in the proposed model Eighth Circuit instruction.

> THE COURT: All right. Honestly, you should have raised this objection on Friday or on Saturday. Raising it now when we are trying to finalize this language is very late in the game and I'm very, very unhappy that you are choosing now to raise this objection when you had two opportunities prior to today to do so. But your objection is what it is. It is denied.

*Id*. at 13.

While the Court expressed displeasure with counsel's failure to note the objection in a prior conference, it nevertheless heard and overruled the objection. The Court determined the language in Jury Instruction 32 was permissible.

Further, as discussed further below with respect to Ground III, Petitioner has failed to demonstrate anything improper about the instruction. Thus, counsel's performance did not cause prejudice under *Strickland* because there was no "reasonable probability" that the outcome of the trial would have been different. *See, e.g.*, *Jackson v. United States*, 956 F.3d 1001, 1008 (8th Cir. 2020) ("Because the district court did not err in instructing the jury, it was not ineffective for [counsel] to fail to object.").

**<u>Ground III: trial counsel's failure to object to a constructive amendment of the indictment set forth in Jury Instruction 32</u>**

Petitioner's third claim faults counsel for failing to raise all of Petitioner's objections to Jury Instruction 32. Petitioner first objects to the instruction's use of the following phrase: "in this case, the United States alleges that the following substances were either Schedule I controlled substances or *Schedule I* controlled substances analogues at some point during the course of the conspiracy . . ." ECF No. 1 at 22 (emphasis added). Petitioner asserts that this was misleading to the jury because controlled substance analogues are never on Schedule I. *Id*. This is incorrect.

The Analogue Act discusses the treatment of controlled substance analogues. In relevant part, the statute states, "[a] controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a *controlled substance in schedule I*." 21 U.S.C. § 813(a) (emphasis added). The language of Jury Instruction 32 accurately reflects and comports with the language of the relevant statute and in no way would be considered misleading to the jury.

Petitioner's counsel could not have been ineffective in this instance as the Court heard Petitioner's objection to the language of the Instruction; overruled the objection; and approved of the Instruction. Any further objection raised by counsel here would not have been meritorious, as the language in the Instruction mirrored the language in 21 U.S.C. § 813. Petitioner's counsel was thus not ineffective under *Strickland*. *Sittner v. Bowersox*, 969 F.3d 846, 853 (8th Cir. 2020) ("Failure to raise a meritless objection cannot support a claim of ineffective assistance.").

Second, Petitioner asserts that the Instruction contained no chronological timelines of when he possessed or distributed specific chemical compounds and when a specific chemical compound became a controlled substance or could be considered one under the Analogue Act. ECF No. 1 at 22–23. This, Petitioner contends, was also misleading to the jury. *Id*. at 23.

District courts have "broad discretion" in choosing the form and language of jury instructions. *Wolfe v. Fayetteville*, *Ark. Sch. Dist.*, 648 F.3d 860, 864 (8th Cir. 2011). However, it is error for the district court to provide the jury with instructions misstating the law. *Id*. (citing *Ryther v. KARE 11*, 108 F.3d 832, 850 (8th Cir. 1997) (en banc)). As

established above, the language in Jury Instruction 32 comports with the language of the statute. There was no misstatement of the law, and the Court deemed Jury Instruction 32 permissible. Again, counsel was not ineffective for failing to raise a meritless objection concerning the language of the Instruction. *Jackson*, 956 F.3d at 1008.

Petitioner's claim is further refuted by extensive evidence presented by the Government at trial. This evidence included expert testimony regarding whether each of the chemical compounds in question met the definition of a controlled substance analogue pursuant to 21 U.S.C. § 802(32)(A), and an exhibit (exhibit 397) displaying timelines of events and dates when controlled substance analogues became schedule substances. *Palmer* Crim. ECF No. 659, Trial Tr. vol. XIIIa, pp. 77–79. "[T]he conduct charged in the indictment corresponded with the government's proof at trial and the jury instructions," and there is no basis for any claim that the jury would be misled. *United States v. Redzic*, 627 F.3d 683, 691 (8th Cir. 2010).

Third, Petitioner challenges counsel's failure to object to the sentence: "Note that the Schedule I or II controlled substance referenced in the two-part test need not be the same substance referenced for both (a) and (b)." ECF No. 1 at 23.

In *United States v. Carlson*, 810 F.3d 544 (8th Cir. 2016), the Eighth Circuit held that the district court properly instructed the jury that to find defendants guilty, "the government was not required to prove that the analogue was similar in chemical structure to the same controlled substance that it was similar to in psychological effects." *Id.* at 553. In other words, while the "analogue substance must have a similar chemical structure as a controlled substance, its physiological effects may be similar to a different

controlled substance." *Id.* Jury Instruction 32 in the instant matter is similar to the one approved by the Eighth Circuit in *Carlson* and was thus permissible.

Petitioner relies on *United States v. Makkar*, 810 F.3d 1139 (10th Cir. 2015), in support of his claim. In *Makkar*, the Tenth Circuit vacated a conviction because a jury instruction permitted the jury to infer that the defendants knew the incense they were selling had a substantially similar chemical structure to an analogue substance from the fact that the defendants knew the analogue had a substantially similar physiological effect to a controlled substance (marijuana). *Id.* at 1143. The court stated that:

> [T]he fact that one drug produces a similar effect to a second drug just doesn't give rise to a rational inference—let alone rationally suggest beyond a reasonable doubt—that the first drug shares a similar chemical structure with the second drug. And it most certainly does not give rise to a qualifying inference that the first drug shares a similar chemical structure with a *third* drug—as the government was, in fact, allowed to argue to the jury in this case.

*Id.* at 1144 (emphasis in original).

*Makkar* is not on point. Here the instruction did not invite the jury to infer Petitioner's knowledge of the first prong of the test from his knowledge of the second, which was the problem in *Makkar*. The Government in this case demonstrated that the analogue substances had a substantially similar chemical structure to a controlled substance and also that the physiological effects it had were substantially similar to perhaps a different controlled substance. As such, the jury instruction was permissible, and Petitioner's counsel was not ineffective for failing to object to it.

Fourth, Petitioner faults counsel for failing to object to the definition of the term "substantially similar" in Jury Instruction 32. The relevant portion reads:

> The term 'substantially similar' should be given its ordinary meaning. Note, however, that 'substantially similar' does not mean "exactly the same." Therefore, some level of difference is acceptable between the structure and effects of a controlled substance analogue and a scheduled controlled substance.

*Palmer* Crim. ECF No. 448 at 47. Petitioner contends that the Government defined "substantially similar" beyond its ordinary meaning, which widened the parameters of congressional intent, and that counsel should have objected on this ground. ECF No. 1 at 11, 24.

The Analogue Act defines a controlled substance analogue as a substance:

> (i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
>
> (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the . . . effect on the central nervous system of a controlled substance in schedule I or II; or
>
> (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the . . . effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A).

The Eighth Circuit has held that "[t]he term 'substantially similar,' as used in the statute, does not mean 'exactly the same.' There obviously will be differences in chemical structures between an 'analogue' chemical and a schedule I or II chemical." *United States v. Washam*, 312 F.3d 926, 930–31 (8th Cir. 2002). Jury Instruction 32 appropriately reflects both the language of the statute and how it should be interpreted

under Eighth Circuit precedent.[11] For these reasons, Petitioner's counsel was not ineffective for failing to object to the language. *See Jackson*, 956 F.3d at 1008.

**Ground IV: appellate counsel's failure to list in appellate brief the Court's Order precluding mention of legal advice**

Petitioner claims that his appellate counsel was ineffective for failing to raise the issue that this Court excluded his advice-of-counsel defense. But there is no basis for this argument. As noted above, the issue was in fact presented on appeal, and the Eighth Circuit addressed and decided it. The Eighth Circuit affirmed the Court's decision to exclude the advice-of-counsel defense because Petitioner failed to make a showing he was entitled to it, as he did not provide a "full proffer of evidence to be offered, including the testimony of [Dandar] and the information provided to counsel in connection with the opinion . . ." *Wolfe*, 781 F. App'x at 569. The appellate court held that a reasonable jury could not have found that Petitioner fully disclosed all material facts before seeking the legal opinion and relied on that opinion in the good faith belief that his conduct was legal. Further, it found that Dandar's opinion letters did not mention the Analogue Act or say anything about the information Petitioner provided to counsel in connection with his request for the letters. *Id.*

Nor can Petitioner show any prejudice. His own testimony at the evidentiary hearing made plain that he could not succeed on any advice-of-counsel defense. Petitioner admitted he knew the products were for human consumption and were being

[11] The Eighth Circuit on appeal of this case also held that the phrase "substantially similar" did not render the act unconstitutionally vague. *Wolfe*, 71 F. App'x at 568.

purchased to get high. Dandar's reports were expressly conditioned on the products not being intended for human consumption.

The Eighth Circuit also specifically addressed and affirmed the Court's decision to exclude evidence of the opinion letters and the advice Petitioner received for the impact it had on Petitioner's *mens rea* for the crime alleged. *Id*. at 569 n. 2.

Petitioner did not offer any legal opinions received from attorneys other than Dandar at the evidentiary hearing. Nor has he provided any legal opinions from others upon which he might reasonably have relied. He had ample opportunity to present those opinions in connection with the evidentiary hearing, and to make the other necessary showings to demonstrate that the attorneys would have been willing to testify. But he did not do so. Ground IV is without merit.

**Ground V: appellate counsel's failure to recognize objections were raised and arguments were properly preserved for appeal**

Petitioner asserts that his trial and appellate counsel were ineffective for failing to object or assert claims based on: (1) the error in Jury Instruction 32, (2) the redaction of portions of a defense expert's PowerPoint presentation, and (3) the mention of Petitioner's failure to file taxes. Petitioner further claims that his appellate counsel was ineffective failing to recognize that these objections were properly preserved and should have been raised on direct appeal.[12]

---

[12] The analysis by which courts determine whether appellate counsel provided ineffective assistance is the same as that for trial counsel. *See Smith v. Robbins*, 528 U.S. 259, 289 (2000).

First, Petitioner's claim regarding appellate counsel's failure to assert error in Jury Instruction 32 is without merit. As explained above, Jury Instruction 32 was not erroneous, so appellate counsel was not ineffective for failing to argue that point.

Second, Petitioner claims that counsel was ineffective for failing to object to the redaction of portions of the defense expert's PowerPoint presentation. During trial, the defense called Dr. Mark Erickson as an expert in chemistry. As part of his testimony, Dr. Erickson prepared a PowerPoint on the chemical structures of the substances at issue in the case. His opinion was that the substances were not substantially similar in chemical structure to certain controlled substances. However, the Government objected to other portions of Dr. Erickson's PowerPoint which compared the chemical structure of the chemicals in question to certain household products. *Palmer* Crim. ECF No. 658, Trial Tr. vol. XII, pp. 10–11. The Court sustained this objection based on relevance.

The Government also objected to portions of the PowerPoint which sought to make pharmacological comparisons between the chemicals at issue and other products. *Id.*, pp. 11–13. The Court ruled that Dr. Erickson was qualified as a chemist but was not qualified to give expert testimony regarding pharmacological effects. As a result, the Court directed defense counsel to create a different PowerPoint without references to chemical structure comparisons to household products and to pharmacological effects, subject to the testimony of the Government's expert. *Id.* pp. 18–19, 23–24.

Defense counsel prepared a second PowerPoint. Again, the Government objected to portions of the PowerPoint. *Palmer* Crim. ECF No. 659, Trial Tr. vol. XIIIa, p. 91. The second PowerPoint contained the chemical structures of both the substances set forth

in the charges and over-the-counter and prescription drugs that were not part of the case. *Id.* pp. 91–102. The Court partly overruled the objection and defense counsel agreed to remove some of the contested references via redactions. *Id.* pp. 93–94. However, defense counsel failed to preserve this issue for review because they did not object to the Court's ruling or offer the unredacted PowerPoint to preserve the objection.

Petitioner claims that the failure to preserve any objections constituted ineffective assistance of counsel at the trial level and that appellate counsel was ineffective for failing to realize this. Petitioner's claim fails to satisfy either prong of *Strickland.*

With respect to performance, trial counsel is not ineffective for failing to preserve an objection to the admission of irrelevant evidence and evidence not supported by expert testimony. The objected-to portion of the initial PowerPoint was irrelevant because it contained chemical comparisons with substances not in issue. The issue was whether the chemicals in question had a similar chemical structure to controlled substances to determine whether they constituted a controlled substance analogue. Whether the chemicals were similar in chemical structure to household products or other substances was not relevant. The redacted PowerPoint remained defective as it still contained references to over-the-counter and prescription drugs. Additionally, the witness's expertise was in chemistry, and the PowerPoint sought to make pharmacological comparisons that were beyond the scope of that expertise. Petitioner has not shown otherwise.

Likewise appellate counsel's performance cannot be deemed ineffective for failing to raise the issue on appeal when it appears frivolous. *Davila v. Davis*, 582 U.S. 521,

532–33 (2017) ("If trial counsel failed to preserve the error at trial, then petitioner's proposed rule ordinarily would not give the prisoner access to federal review of the error, anyway. Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed."). Neither an appeal of the objection that was properly preserved nor an appeal of the one that was not would have been likely to succeed.

Furthermore, Petitioner does not assert how the redacted PowerPoint prejudiced his case, either at the trial or appellate level. Whether the controlled substance analogues were similar in chemical structure to over-the-counter, household, or prescription drugs was not an issue for the jury, and that determination would not have impacted the verdict.

Third, Petitioner claims that counsel was ineffective for failing to object to evidence introduced at trial that Petitioner did not pay taxes for a number of years. Petitioner does not explain what the legal basis for such an objection would have been. Nor does he explain his theory of prejudice as it relates to this evidence. Rather, he simply attempts to explain why he did not properly file the tax returns at issue. ECF No. 1 at 28-30. Petitioner's claim is without merit. Even if an objection would have been sustained (and Petitioner has not demonstrated that it would), in light of the overwhelming evidence of Petitioner's guilt, exclusion of the evidence relating to Petitioner's tax returns would have made little difference.

Finally, to the extent that Petitioner claims that appellate counsel was ineffective for failing to raise every issue on appeal that Petitioner wanted, such a claim is without merit. A winnowing of issues is essential to the appellate process. *Jones v. Barnes*, 463

U.S. 745, 751–52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Declining to raise a claim on appeal is not deficient performance unless that claim was plainly stronger than those actually presented to an appellate court. *Davila*, 582 U.S. at 532–34. Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed. *Id.* Indeed, the appellate brief that "raises every colorable issue runs the risk of burying good arguments." *Jones*, 463 U.S. at 753. From the correspondence provided by Petitioner, this reasoning appears to have driven appellate counsel's decision, and the Court finds the decision was reasonable.

**Ground VIII: trial counsel's failure to invoke a Fifth Amendment violation of double jeopardy**

Petitioner argues that since he was charged in two overlapping conspiracies and duplicative counts, double jeopardy occurred, and his counsel was ineffective for failing to object. ECF No. 1 at 12.

Turning to Petitioner's two indictments, Counts One, Two, and Three of both allege Petitioner conspired to distribute or possess with the intent to distribute Schedule I controlled substances or Schedule I controlled substances analogues intended for human consumption in violation of 21 U.S.C. § 813, 841, and 846 (Count One of both indictments); conspired to introduce and receive misbranded drugs in interstate commerce in violation of 18 U.S.C § 371 and 21 U.S.C. §§ 331 and 333 (Count Two of both indictments); and conspired to launder money in violation of 18 U.S.C. §§ 1956(h)

and 1957 (Count Three of both indictments). However, the underlying offenses of both indictments are not identical.

Both Petitioner and the Government cite to *Blockburger v. United States*, 284 U.S. 299 (1932), which lays out the test for determining whether two offenses are the same for purposes of double jeopardy. ECF No. 1 at 12; ECF No. 19 at 33. In *Blockburger*, the Supreme Court held that whenever "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304.

Additionally, in this Circuit, the court must apply a "totality of the circumstances" analysis to determine whether two alleged conspiracies are in reality the same conspiracy. *United States v. Petty*, 62 F.3d 265, 267 (8th Cir. 1995) (citing *United States v. Thomas*, 759 F.2d 659, 662 (8th Cir. 1985), and *United States v. Tercero*, 580 F.2d 312, 315 (8th Cir. 1978)). "The test is whether the totality of the circumstances demonstrates that the two alleged conspiracies are in reality the same conspiracy." *Petty*, 62 F.3d at 267. "Under this test, the court considers the following five factors: (1) the time the conspiracies existed; (2) the identity of the conspirators involved; (3) the statutory offenses charged in the indictment; (4) the nature and scope of the activity charged; and (5) the location where the events alleged as part of the conspiracy took place." *Id.* at 267 (collecting cases).

Under the totality of the circumstances, the indictments here do not present a double jeopardy problem. First, the indictments allege conspiracies that took place at

different points in time. After law enforcement executed search warrants on the Defendant Sloan, he ceased manufacturing synthetic drugs for several months. After Sloan ceased his operation, Petitioner arranged for co-defendant Palmer to begin manufacturing synthetic drugs to supply his operation. The *Sloan* indictment alleges that the conspiracies started sometime in 2011 and ended in June of 2012; in the *Palmer* indictment, the earliest alleged acts began in December of 2012 and continued at least into September of 2013. There is no overlap in the timelines of the indictments.

Second, each indictment involves different people. The *Sloan* indictment alleges that Petitioner entered into a conspiracy with co-defendant Greg Sloan and eleven other co-defendants. While the *Palmer* indictment alleges that Petitioner entered into a conspiracy with co-defendant Palmer and four different co-defendants. Aside from Petitioner, none of the other conspirators appear in both indictments. *Petty*, 62 F.3d at 267–68 (holding that conspiracies in two indictments did not create a double jeopardy problem when one indictment named fourteen conspirators and the other only two, and the defendant was the only person who appeared in both). Additionally, the businesses involved in the money laundering conspiracy are all different except for Petitioner's business, Psychedelic Blur, LLC, which played a minor role in the *Sloan* indictment but was one of the main businesses involved in the *Palmer* indictment.

Third, while the statutory offenses charged in the indictments are the same with respect to Petitioner, with both charging drug-trafficking and misbranding conspiracies in violation of 21 U.S.C. §§ 841, 846, and 371, different controlled substances were named. The *Sloan* indictment alleges that conspiracy planned to use at least thirteen controlled

substances or analogues to manufacture at least fourteen synthetic or blend of synthetic drugs. The *Palmer* indictment alleges that conspiracy planned to use at least six controlled substances or analogues to manufacture at least fifteen synthetic drugs. Four of the controlled substances or analogues appear in both indictments, but none of the synthetic drugs are the same.

Further, the Eighth Circuit has held "it is possible to have two different conspiracies to commit exactly the same type of crime." *United States v. Tanner*, 860 F.2d 864, 867 (8th Cir. 1988) (holding there were two distinct conspiracies rather than a single overall agreement after comparing a Missouri indictment alleging a conspiracy to distribute heroin and cocaine between April 1985 and January 1986 to a California indictment alleging a conspiracy to knowingly possess and distribute heroin during a two-day period in 1986, both in violation of 21 U.S.C. § 841(a)(1)). So, while some of the substances appear in both indictments, it does not tilt the balance into Petitioner's favor. *Petty*, 62 F.3d at 267–68 (holding that the appearance of the same drug in a conspiracy did not lean towards double jeopardy). Additionally, the specific transactions of the money laundering conspiracies in Count III were different in each indictment.

Fourth, the nature and scope of the activities charged in the indictments are different. The activities underpinning the *Sloan* indictment were much more extensive than those in the *Palmer* indictment. In *Sloan*, nearly double the number of controlled substances were used and more than twice the number of people were involved. Additionally, in *Sloan*, the defendants sold several million dollars' worth of drugs and laundered that money. In *Palmer*, the defendants only sold a few hundred thousand

dollars' worth of drugs, which money was subsequently laundered. The *Palmer* indictment also involved an international aspect that did not occur in *Sloan*, since some of the substances were imported from China.

Fifth, the events in the indictments primarily took place at different locations. Though both conspiracies involved events that occurred in St. Louis, the *Sloan* indictment alleged that criminal activity primarily took place in Indiana, while the *Palmer* indictment alleged that the acts of the conspiracies also took place in the rural areas surrounding St. Louis, China, and Springfield, Missouri. These differences are further evidenced by the search warrants executed in each case. In *Sloan*, the search warrants were executed at production sites for Rao and Lentsch, as well as the offices and warehouses of co-defendant Greg Sloan. In *Palmer*, the search warrants were executed at a manufacturing and packaging facility in Barnhart, Missouri, as well at Petitioner's residence, offices, warehouses, and storage lockers.

Under the totality of the circumstances, the indictments require proof of different facts to support each conspiracy. The drugs, transactions, people, locations, manner, and means of the conspiracies in each indictment are different. As such, the underlying agreements in each indictment as well as the evidence used to prove each, were different, thus supporting separate conspiracy charges.[13] Moreover, Petitioner has not demonstrated prejudice because the sentences were set to run concurrently.

---

[13] Petitioner does not appear to be contending that the conspiracies within each indictment also present separate double jeopardy problems. Such a claim would fail in any event. Applying the five factors under the totality of the circumstances test, Counts One, Two, and Three of both indictments charge different statutory violations, the nature

**<u>Ground IX: trial counsel's failures regarding cross-examination of a Government witness and failure "to correlate believe and belief with the scienter requirement and mental state of defendant in an Analogue prosecution, prohibit[ing] [Petitioner] from conveying actual innocence to the jury" (ECF No. 2 at 1)</u>**

Although Ground IX is not entirely clear, Petitioner appears to argue that trial counsel was ineffective for (1) failing to adequately cross-examine Government witness Joseph Gabrick, who was one of Petitioner's employees and a co-Defendant in the *Palmer* case who pleaded guilty, and (2) failing to convey to the jury that Petitioner did not possess the requisite *mens rea* for the crimes charged.

As an initial matter, to the extent that Petitioner is arguing that his counsel was ineffective for failing to present evidence that Petitioner lacked the requisite *mens rea*, those arguments have already been discussed and rejected in Ground I above. Moreover, Petitioner has failed to show any credible evidence that could have been presented.

Petitioner's remaining argument, that his counsel was ineffective on cross examination of Gabrick, is refuted by the record. Specifically, Petitioner contends that counsel was ineffective in responding to the Government's objection to counsel's line of questioning on a conversation between Gabrick and a federal agent about Petitioner. *Palmer* Crim. ECF No. 657, Trial Tr. vol. XI, p. 68. In response to the objection, the Court held an extensive bench conference with counsel. During the bench conference, Petitioner's counsel indicated that he wished to ask Gabrick to confirm that the agent told Gabrick that Petitioner believed he had done nothing wrong. *Id.* at 69-70. Petitioner's

---

and scope of the charged activities are different, and the violations involved different people, locations, and times.

counsel confirmed that he would be offering the testimony for the truth of the matter, namely, that Petitioner believed he had done nothing wrong. *Id.* p. 71. The Court sustained the Government's objection based on hearsay. *Id.*

Petitioner has not explained what more he wished counsel to argue with respect to this point. Nor has he argued or any cited any authority demonstrating that the Court's evidentiary ruling was erroneous.

In any event, in light of the overwhelming evidence against Petitioner at trial, Gabrick's relatively insignificant testimony in response to this single question would not have changed the outcome. Indeed, the record reflects that both during the cross examination and at other points throughout the trial, counsel attempted to develop testimony and arguments that Petitioner did not have the requisite *mens rea*.

For example, earlier in the cross-examination of Gabrick, Petitioner's counsel asked the following:

> Q. And didn't Chuck tell you, look, we're not doing anything wrong or we'd be arrested, he told you that didn't he?
>
> A. Yes.
>
> Q. He told you that the Government was just trying to harass him and you, and put you out of business, he told you that, did he not?
>
> A. Yes.

*Id.* pp. 60–61. Additionally, at times during his closing argument, counsel stated that the Petitioner did not know the substances at issue were illegal. *Palmer* Crim. ECF No. 661, Trial Tr. vol. XV, pp. 117–19.

To the extent Petitioner wishes his counsel had spent more time on this issue, that is a matter of strategy that the Court must avoid second guessing. *Johnson v. United States*, 278 F.3d 839, 842 (8th Cir. 2002) ("When determining whether counsel's representation was deficient, 'a court must avoid second-guessing trial strategy.'") (citation omitted). Counsel is not ineffective simply because the jury decided to believe in the Government's theory of the case. It is the role of the jury to decide whether to believe testimony or not. *United States v. Clyde*, 168 F. App'x. 135, 138 (8th Cir. 2006) (holding the jury weighs witnesses' credibility and is free to reject any testimony they regard as unbelievable).

**Ground X: trial counsel's failure to object to the Court's ruling regarding a jury note**

In Ground X, Petitioner argues that counsel was ineffective for failing to object to the Court's response to a jury note stating: "Can we get a copy of the Controlled Substances Act." *Palmer*, Crim. ECF No. 445. The Court declined to send the jury a copy and instead responded: "You must be guided by the evidence and the instructions." *Id.* Petitioner claims that if the jury had a copy of Title 21, it would have found him not guilty.

Judges have broad discretion to give jurors copies of statutes for their deliberations, but typically, the judge instructs the jury on the law and does not give jurors a copy of relevant statutes. *Getty Petroleum Mktg., Inc. v. Cap. Terminal Co.*, 391 F.3d 312, 332 n.26 (1st Cir. 2004) (Lipez, J., concurring); *United States v. Bearden*, 423 F.2d 805, 813 (5th Cir. 1970) (holding that the district court did not err in refusing to

provide the jury with copies of the relevant statutes). As the Eighth Circuit has explained, "[i]n the orderly trial of a case, the law is given to the jury by the court and not introduced as evidence . . . . Obviously, it would be most confusing to a jury to have legal material introduced as evidence and then argued as to what the law is or ought to be." *United States v. Bernhardt*, 642 F.2d 251, 253 (8th Cir. 1981) (quoting *Cooley v. United States*, 501 F.2d 1249, 1253–54 (9th Cir. 1974)).

Any objection to the Court's response to the jury note would have been overruled as without merit. *Bearden*, 423 F.2d at 813 (holding that the district court did not err in refusing to admit into evidence legal references and citation). Counsel is not ineffective for failing to raise a meritless objection. *United States v. Dodge*, No. 6:17-CR-323, 2024 WL 2099376, at *10 (W.D. La. Jan. 31, 2024) (finding that counsel was not ineffective for failing to object to the court's response to a jury note), *report and recommendation adopted*, No. CR 17-323-01, 2024 WL 2095255 (W.D. La. May 8, 2024); *Seabridge v. United States*, No. 1:17-CV-162, 2020 WL 4689196 at * 4 (E.D. Tex. June 30, 2020) (same).

**Ground XI: trial and appellate counsel's failure to object to a plain error in the indictments and jury instructions, which created a faulty indictment**

In Ground XI, Petitioner claims that counsel was ineffective for failing to object to the inclusion of the phrase "Schedule I Controlled Substance or *Schedule I* Controlled Substance Analogue" in the indictments and jury instructions. ECF No. 8 (emphasis added). This claim appears to be duplicative in many respects to Ground III, in which

Petitioner objected to Jury Instruction 32's reference to "Schedule I" controlled substance analogues. For similar reasons, Ground XI fails.

Again, the relevant statutes provide that a "controlled substance analogue" is a substance that is substantially similar in chemical structure and pharmacological effect as a controlled substance, 21 U.S.C. § 802(32)(A), and that "[a] controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I," 21 U.S.C. § 813.

The evidence developed at trial showed that at various points, the substances Petitioner conspired to distribute could have been either Schedule I controlled substances or controlled substance analogues intended for human consumption, to be treated as Schedule I controlled substances, *i.e.* Schedule I controlled substance analogues. Counsel was not ineffective for failing to object to the indictment and the jury instructions on these grounds because they reflect a proper application of federal law.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Charles Wolfe's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's motion to compel is **DENIED**. ECF No. 164.

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability as Petitioner has not made a substantial showing of the denial of a federal constitutional right as required by 28 U.S.C. § 2253(c)(2).

A separate Judgment shall accompany this Memorandum and Order.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 24th day of September, 2026.